[No. 23852. Department One. December 20, 1932.]

L. O. GRAVES, *Respondent*, v. J. PERCIVAL JONES, *Appellant*.[1]

*Farrell & Sammis,* for appellant.

*Riddell, Brackett & Fowler,* for respondent.

PARKER, J.—The plaintiff, Graves, commenced this action in the superior court for King county seeking a decree adjudicating him to be the owner of 250 shares of the capital stock of the Dairy Products Co., a domestic corporation, as against the claim of title thereto

[1]Reported in 17 P. (2d) 46.

made by the defendant, Jones. The cause, being of equitable cognizance, proceeded to trial in the superior court, sitting without a jury, and resulted in a decree awarding relief to Graves as prayed for, from which Jones has appealed to this court.

In the year 1918, appellant, Jones, and James P. Flick entered into a partnership agreement for the purpose of engaging in the distribution of dairy products. They accordingly commenced that business, becoming the distributing agency in Seattle of the Enumclaw Co-Operative Creamery Association, which association to a large extent financed the partnership in procuring its equipment and establishing its distributing business. In the early spring of 1920, the copartnership had become indebted to the Enumclaw association in an amount of more than thirty-five thousand dollars. It was then contemplated that Flick would retire from the business. This seems to have arisen by reason of friction between him and the management of the Enumclaw association; that management apparently not being willing to extend time of payment of the indebtedness owing to it by the partnership if Flick remained in the partnership.

About that time, there was an agreement made between Jones and his mother that she would furnish one thousand five hundred dollars to him to purchase Flick's one-half interest in the business for Graves, her son-in-law. Accordingly, she gave her check to Jones, her son, for one thousand five hundred dollars, the proceeds of which he used in such manner as to result in Graves becoming the owner of Flick's one-half interest in the business, though that was not fully consummated until after the business had been incorporated.

On March 5, 1920, Jones and Flick and Aylmore, their attorney, executed articles of incorporation of

the Dairy Products Co., providing for five hundred shares of its capital stock of which Jones subscribed for 249 shares, Flick subscribed for 249 shares, and Aylmore subscribed for two shares. Aylmore's subscription seems to have been only a nominal subscription to qualify him to become one of the trustees of the corporation, the articles of incorporation having provided for three trustees. The record warrants us in assuming that Jones and Flick were the real owners of all of the shares of the stock in any event, as between them and Aylmore.

On March 12, 1920, the articles of incorporation were duly filed in the office of the secretary of state. On March 25, 1920, Jones and Flick conveyed all their partnership business and property to the newly created corporation, the Dairy Products Co., in payment of their stock subscriptions. That corporation accordingly took over the business and property of the copartnership burdened with its indebtedness to the Enumclaw association.

On May 5, 1920, Flick formally assigned all of his shares of stock in the Dairy Products Co. to Jones; this in consideration of the one thousand five hundred dollars furnished by the mother, Mrs. Jones, to Jones, her son. Flick's certificate evidencing his ownership of his shares was surrendered and cancelled upon the records of the company, and at the same time a certificate for two shares was issued to Graves, evidencing his ownership of shares to that extent. No other certificate evidence of Flick's prior owned shares was ever thereafter issued.

On the same day that Flick formally transferred and surrendered his certificate evidencing his ownership of his shares and the issuing of the certificate to Graves evidencing his ownership of two of those shares, Flick resigned as a trustee of the corporation, and Graves

was elected trustee in his place, and was also elected vice president. Thereafter, up until shortly prior to the commencement of this action in May, 1931, Graves, as well as Jones, continued in the active management of the affairs of the corporation, each being regarded as exercising equal power in that behalf, and each being paid the same salary during all of that period.

Further facts, in so far as necessary to be here noticed, are set forth in the trial judge's findings of fact as follows:

"In the spring of 1920, the defendant J. P. Jones, and James P. Flick, were the owners in equal shares of all of the capital stock of the Dairy Products Company, which company was engaged in the dairy business at Seattle, Washington. Said company was indebted to Enumclaw Co-operative Creamery Association, a corporation, in an amount approximating at least $35,000, and was insolvent. At said time Mary A. Jones, the mother of the defendant J. P. Jones for and on behalf of the plaintiff, L. O. Graves, paid to the defendant J. P. Jones the sum of $1,500, and in consideration of such payment the defendant J. P. Jones orally agreed with the said Mary A. Jones and with the plaintiff, L. O. Graves, that the defendant J. P. Jones would acquire from James P. Flick one-half of the capital stock of Dairy Products Company and would assign and deliver the said stock to the plaintiff, L. O. Graves. Pursuant to said agreement Mary A. Jones paid to the said J. P. Jones the said $1,500 and said J. P. Jones acquired the stock interest of said Flick in said Dairy Products Company, to-wit, 250 shares, being one-half of the capital stock of said company. Thereupon the said J. P. Jones informed the plaintiff, L. O. Graves, that Enumclaw Co-Operative Creamery Association as a condition to further forebearance of the collection of the indebtedness due it, had demanded that he, the said J. P. Jones remain in control of the capital stock of said corporation and of its management until such time as the indebtedness due Enumclaw Co-Operative Creamery Association had been paid in full. Thereupon plaintiff,

L. O. Graves, and defendant J. P. Jones orally agreed that J. P. Jones should act as president of said corporation; that L. O. Graves should act as its vice-president; that each should have equal authority with the other; that the drawing accounts should be equal and that each should devote all of his time and attention to forwarding the interest of said corporation and that as soon as the indebtedness owing said Enumclaw Co-Operative Creamery Association had been paid off, a stock certificate should be issued evidencing the ownership by L. O. Graves of 250 shares, which is one-half of the stock of said Dairy Products Company.

"Pursuant to said agreement, plaintiff entered upon his duties as vice-president, devoted his entire time and attention to the business of Dairy Products Company from the spring of the year 1920 to the date of the commencement of this action and has fully performed all of the duties and obligations imposed upon him by said contract.

"Since the time of the making of said contract, the business of said dairy has greatly increased, the indebtedness owing to Enumclaw Co-Operative Creamery Association has been reduced to approximately $7,500.00 and no objection is now made by Enumclaw Co-Operative Creamery Association to the ownership by plaintiff of one-half of said capital stock. . . .

"Heretofore and within thirty days prior to the beginning of this action, the defendant J. P. Jones in violation of his said oral agreement indirectly informed said L. O. Graves that he, the defendant J. P. Jones was the owner of all of the capital stock of Dairy Products Company and has sought to exclude the plaintiff, L. O. Graves, from any control of the affairs of said corporation and any interest therein and has announced that he would refuse to transfer or consent to the transfer to L. O. Graves of the said stock. . . ."

It may be conceded that the trial court erred, in a technical sense, in finding that it was agreed between Jones and his mother that he would cause one-half of the shares of the Dairy Products Co. to be transferred

to Graves, since the agreement with the mother was made before the creation of that corporation, as she apparently did not then know of the possibility of the creation of the corporation and its acquiring the business and property of the partnership. This, however, ultimately resulted in being a matter of form, rather than of substance, touching the ultimate acquiring of Flick's interest in the business by Graves.

█ It is first contended in behalf of Jones that the contract looking to the vesting in Graves of a one-half interest in the partnership business was void under our statute of frauds, because it was not in writing, but only an oral "agreement that by its terms is not to be performed within one year from the making thereof." We quote from Rem. Comp. Stat., § 5825, being a provision of our statute of frauds.

Counsel for Jones seem to have lost sight of the fact that we have, first, the agreement between Mrs. Jones, the mother, and Jones, her son, looking to the acquiring of Flick's interest in the business and property of the partnership for Graves. That agreement was not only intended to be performed within one year after its making, it manifestly being made at the time of the giving of the one thousand five hundred dollar check, but was, in fact, actually, fully performed by the mother at the very time of its making by the giving of the check; and was also actually, fully performed, so far as establishing thereunder the rights of Graves, by the complete acquiring from Flick of his entire one-half interest in the business, in the form of all of his shares in the corporation. This occurred long prior to the expiration of one year immediately following the making of the agreement between Jones and his mother, which she had immediately fully performed on her part.

In 25 R. C. L. 461, we read:

"The broad view is generally taken that the statute applies only to contracts not to be performed on either side, and not to a contract to be and fully performed on one side within the year, and therefore that the defendant cannot avail himself of the statute if the contract was to be and has been fully performed by the plaintiff within the year though it was not to be performed by him within the year."

It may be conceded that there are decisions which indicate exceptions to this broadly expressed view; but it seems clear to us that the facts of this case show it to be clearly within this broad view, and not within any of the possible exceptions thereto. We are of the opinion that our statute of frauds does not stand in the way of the present enforcement of the agreement between Jones and his mother made for the benefit of Graves.

■ The agreement between Jones and Graves that Jones should remain in control of the shares of stock of the Dairy Products Co. until the indebtedness from it to the Enumclaw association should be liquidated, was manifestly for no other purpose than that Jones should have the superior voice in the management of the affairs of the Dairy Products Co., in so far as such management might impair the indebtedness obligation of the Dairy Products Co. to the Enumclaw association. We think it did not affect, in any degree, the equitable title of Graves to the shares theretofore owned by Flick. Manifestly, whatever title to those shares was vested in Jones by Flick's transfer thereof to him was a title held by Jones in trust for Graves. This was but the continuing of the trust arising upon Jones acquiring the interest of Flick in their partnership property and business before the creation of the corporation. It seems plain to us that this trust relationship touch-

ing the technical, legal title to the partnership business and affairs and the shares of stock in its successor, the corporation, is unaffected by our statute of frauds.

It is next contended in behalf of Jones that the right to the relief prayed for by him and awarded by the superior court to him was barred by the statute of limitations at the time of the commencement of this action. We do not see any merit in this contention. What we have already said comes nearly, if not quite completely, answering this contention.

We have seen that Graves and Jones had, for all practical purposes, equal management and control of the affairs of the Dairy Products Co. during the entire period up until near the time of the commencement of this action. Each was paid the same salary for his service to the Dairy Products Co. There manifestly were no dividends declared during that period, the profits going to the reduction of the indebtedness of the business, especially the indebtedness to the Enumclaw association; so that each was benefited equally as stockholder in the profits of the Dairy Products Co., as well as a salaried employe thereof. During all that period, Graves was in full enjoyment, as he was led to believe, of all his rights as owner of one-half the shares of stock in the Dairy Products Co. It seems clear to us that the statute of limitations does not bar the present claim of ownership made by Graves to one-half of the shares of the stock of the Dairy Products Co.

It is finally contended in behalf of Jones that the evidence does not support the decree awarding relief to Graves. We have carefully read all of the evidence introduced upon the trial of this case as brought to us in the statement of facts, not being satisfied to depend entirely upon the evidence as abstracted by counsel. The evidence is not free from conflict. We deem it unnecessary to review the evidence here in detail for

560

the purpose of demonstrating the correctness of our conclusion that we should not disturb the decree rendered by the trial court. We think the evidence warranted the trial judge in viewing the proven facts to be, in substance, as above summarized.

The decree is affirmed.

TOLMAN, C. J., MITCHELL, HOLCOMB, and MILLARD, JJ., concur.