[No. 25585. Department One. September 14, 1935.]

PUGET MILL COMPANY, *Respondent*, v. ALBERT S. KERRY *et al., Appellants.*[1]

[1]Reported in 49 P. (2d) 57.

*Evans & McLaren,* for appellants.

*McMicken, Ramsey, Rupp & Schweppe,* for respondent.

BEALS, J.—The plaintiff, Puget Mill Company, a corporation, has for many years been the owner of lots located at the southwest corner of Second avenue and Seneca street, in the city of Seattle. During the month of March, 1901, the property being then unimproved, plaintiff executed a fifty year ground lease thereof to Moore Investment Company, a corporation, commencing May first following. By the terms of this instrument, the lessee bound itself to erect on the property, at its own expense, by June 1, 1902, a store and office building, according to specifications contained in the lease, to cost not less than $130,000. The lease also contained a clause to the effect that the lessee could not assign the same without the lessor's written consent. During the year 1902, an agreement was entered into between the lessor, the lessee and Lumber Exchange Building Company, a corporation, a proposed assignee of the lease. By this agreement, the time within which the building was to be constructed

was extended, the minimum cost thereof was increased, provision was made for financing the construction, and consent given by the lessor to the assignment to the proposed assignee.

In due time, the building was erected, the assignee of the lease operating it thereunder for many years. During the month of May, 1923, the owner of the lease assigned it to defendant Albert S. Kerry, in consideration of $177,422.70, of which $50,000 was paid by the assumption of a mortgage, which was later paid. In connection with this transaction, two written agreements were executed by the parties concerned.

First, an agreement, dated May 10, 1923, was entered into between the then holder of the lease, Lumber Exchange Building Company, a corporation, as first party, and defendant Albert S. Kerry, as second party. By this instrument, the lease was assigned to Mr. Kerry; the last two paragraphs of the assignment reading as follows:

"And the said Albert S. Kerry, in consideration thereof, does hereby assume and agree to pay said mortgage debt according to the terms thereof, and to promptly fulfill and perform all of the terms and conditions in said lease on the part of the lessee to be done and performed.

"This assignment, however, shall not become valid or binding upon either of the parties hereto until the consent of said Puget Mill Company in writing shall have been obtained."

This agreement was executed only by the first party.

The other and *tripartite* agreement, bearing date the same day, was executed by the same holder of the lease, as first party, Albert S. Kerry and Katherine G. Kerry, his wife, as second parties, and plaintiff, Puget Mill Company, a corporation, the lessor, as third party. This agreement recites the execution of the original lease by plaintiff, the assignment thereof by the orig-

inal lessee to Lumber Exchange Building Company, and later the assignment of the lease to Mr. Kerry; the agreement then continuing as follows:

"Whereas, the said Albert S. Kerry and wife, parties of the second part herein, and the said Lumber Exchange Building Company, party of the first part herein, have applied to the said Puget Mill Company, party of the third part herein, for its written consent to the assignment of the said lease hereinbefore referred to to the said Albert S. Kerry; and

"Whereas, under the provisions of said original lease no assignment or transfer of said lease by the lessee or assignee thereof is valid without the written consent of the said Puget Mill Company, the lessor therein, and party of the third part hereto;

"Now, Therefore, for and in consideration of the sum of one dollar ($1.00) lawful money of the United States of America, in hand paid, each to the other, receipt whereof is hereby acknowledged, and of the stipulations hereinafter set forth, it is hereby mutually agreed, by and between the parties hereto, as follows:

"(1) That the said Albert S. Kerry and wife do hereby accept the assignment of the lease hereinbefore mentioned, and they do hereby further expressly assume and agree to perform and carry out all and singular the covenants, agreements, promises and undertakings in said lease contained, to be carried out and performed by the lessee in accordance with the terms and conditions of said lease.

"(2) That the said Puget Mill Company, its successors or assigns, now especially referring to the provisions of paragraph 10 of said lease, does hereby consent to the assignment of said lease by the Lumber Exchange Building Company to the said Albert S. Kerry, his heirs and assigns, but this consent shall in no way relieve the said Albert S. Kerry, his heirs or assigns, from the application to him and them of said paragraph 10 of said lease, as to any future assignment or transfer."

This agreement was formally executed and acknowledged by all the parties thereto.

During the year 1923, by an instrument in writing, defendant Albert S. Kerry assigned to one B. F. Bush an undivided one-fourth interest in the lease, and a similar interest to one C. J. Smith. By this assignment, Mr. Kerry's assignees agreed that they would perform all of the covenants and agreements in the lease by the lessee to be performed, their obligation to be proportionate to their interests; the agreement continuing:

"It is expressly understood and agreed, however, that the said Kerry is in no manner released or discharged hereby from his obligation to the lessor, the Puget Mill Company, under said lease as therein provided. That the obligation of the parties of the second and third parts herein to the lessor with respect to said lease, shall be in addition to and independent of the obligations of the said Kerry as now existing thereunder. This assignment, however, shall not become operative or binding on any of the parties hereto until the consent of the said Puget Mill Company in writing shall have been obtained thereto."

This assignment bears the following endorsement executed by plaintiff, Puget Mill Company:

"The Puget Mill Company hereby consents to the foregoing assignment of leasehold interest as evidenced by the within instrument, dated 2nd day of June, 1923, without waiving, however, except as herein expressly stated, the covenant in the lease against assignment. Executed in four parts, this 6th day of October, 1923."

During the month of November following, Mr. Kerry assigned to Elizabeth Smith a two and one-half per cent interest of his remaining one-half interest in the lease. February 2, 1933, defendants Kerry and the then owners of the Bush and Smith interests joined in an assignment of the lease to Seattle Medical Arts Building Company, a corporation.

Plaintiff instituted this action February 8, 1934, de-

manding judgment against Mr. and Mrs. Kerry for certain items of rent which became due under the lease from and after May 1, 1932, and for certain taxes paid by plaintiff. Defendants admitted liability for certain of the items, but denied any obligation on their part to pay others. Trial of the action to the court resulted in the entry of findings of fact and conclusions of law in plaintiff's favor, followed by a judgment, from which defendants have appealed.

Respondent contends that appellants are liable to it for all sums which have become due under the lease, while appellants contend that their responsibility under the lease terminated with their assignment thereof. Pursuant to stipulation, appellants have paid to respondent those sums which they admitted they owed, and such items are out of the case. The question to be determined, then, is appellants' liability for sums which became due under the lease after their assignment thereof, as above set forth.

Error is assigned upon the entry of judgment against appellant A. S. Kerry, and against the marital community composed of appellants, in any amount in excess of the liabilities admitted. Appellants also contend that the trial court erred in entering judgment against appellant Katherine G. Kerry in any amount whatsoever.

Respondent, of course, relies upon the two instruments bearing date May 10, 1923, the material portions of which are above quoted. Appellants contend that the evidence showed that the assumption clause contained in the assignment to Mr. Kerry did not represent the real agreement of the parties, but was included therein by mutual mistake; that there was no consideration for this portion of the agreement; that the assignment, not having been signed by appellants, is void under the statute of frauds; and that, in any

event, respondent, not having been a party to this agreement, can claim no rights thereunder. As to the other of the instruments above referred to, that containing the consent by respondent to the transfer of the lease, appellants argue that respondent at that time no longer had any consent to give or withhold, and that, consequently, there was no consideration whatever for the execution of the agreement.

The portion of the original lease referring to any assignment thereof reads as follows:

"The said party of the second part shall not have the right to assign this lease or any interest therein nor shall the said party of the second part involuntarily or by operation of law permit its interest in this lease to be sold or assigned without first obtaining the written consent of the party of the first part thereto."

By the first assignment of the lease, from Moore Investment Company to Lumber Exchange Building Company, executed July 18, 1902, the assignee expressly assumed and agreed to carry out and perform "all and singular the terms, conditions, covenants and agreements in said lease contained, to be kept and performed by the lessee, as therein set forth." By a supplemental agreement executed July 23, 1902, between Moore Investment Company, first party, Lumber Exchange Building Company, second party, and respondent, as third party, it was stated and repeated that it was specifically agreed between the parties that the agreement should bind all the parties thereto, their successors or assigns; that nothing therein contained should operate to release Moore Investment Company, the original lessee, from any of its covenants and agreements; that the assignee of the lease assumed and agreed to perform all the covenants, promises. and undertakings contained in the lease, according to the terms thereof; the paragraph of the agreement con-

taining respondent's consent to the assignment of the lease reading as follows:

"That the said Puget Mill Company, its successors or assigns, in accordance with the provisions of paragraph ten (10) of said lease, does hereby consent to the assignment of said lease to (by) the Moore Investment Company, the lessee in said lease, to the said Lumber Exchange Building Company, on the express condition that neither the said Moore Investment Company, its successors or assigns, shall be in any way released from any of the obligations, agreements or covenants in said lease contained, to be kept or performed by it."

In this connection, it should be noted that appellants contend that, with the execution by respondent of the foregoing consent to the assignment of the lease, the restriction contained in the original lease against assignment thereof by the lessee without the lessor's consent was fully accomplished; and that, from that time on, the lease became assignable by the tenant at will, and that respondent no longer had any right either to grant or refuse its consent to any such assignment.

We shall now discuss appellants' contention that, in the agreement dated May 10, 1923, whereby Lumber Exchange Building Company assigned the lease to appellant A. S. Kerry, the paragraphs above quoted, to the effect that Mr. Kerry agreed to fulfill and perform all the terms and conditions of the lease, and that the assignment should not become valid until consented to by respondent in writing, were included therein by mutual mistake, and that the trial court should have reformed the document by judicial decree, eliminating these paragraphs. The court expressly found against appellants upon the issue of mutual mistake tendered by them in their answer, and refused to reform the agreement. As above stated, the assignment just referred to was executed only by

the assignor; Mr. Kerry not having signed the same. By the other agreement above referred to, also bearing date May 10, 1923, it was agreed, *inter alia,* between the three parties thereto that respondent consented to the assignment to Mr. Kerry.

Appellants contend that, from the evidence, it appears that, during the negotiations between him and his prospective assignor, the matter of any assumption of the lease by Mr. Kerry was never discussed. Mr. Kerry testified that it was at first contemplated that the transaction should be consummated by the purchase by him of the capital stock of the then lessee. Mr. Henry McClure, who was, at the time of the sale to Mr. Kerry, president of the Lumber Exchange Building Company, and as such conducted the negotiations, died prior to the trial of this action, but certain of his files and papers were introduced in evidence, which appellants argue support their contention.

The burden of proof on this phase of the case, of course, rested heavily upon appellants. Long after the execution of the contract, and when it was sought to be enforced against them, they sought its reformation. In the opinion rendered in the case of *Hapeman v. McNeal,* 48 Wash. 527, 93 Pac. 1076, this court, in considering the matter of reformation of a deed, quoted from 2 Pomeroy's Equity Jurisprudence (4th ed.), § 859, the following:

"The authorities all require that the parol evidence of the mistake and of the alleged modification must be most clear and convincing,—in the language of some judges, 'the strongest possible,'—or else the mistake must be admitted by the opposite party; the resulting proof must be established beyond a reasonable doubt. Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a *mere* preponderance of evidence, but only upon a certainty of the error."

In the case cited, reformation of the deed under attack was denied. Similar questions were considered by this court in the cases of *Moore v. Parker,* 83 Wash. 399, 145 Pac. 440, and *Blass v. Waldrip,* 176 Wash. 324, 29 P. (2d) 403, in which cases the text above quoted was referred to with approval and reformation refused.

Appellants argue that, because the Lumber Exchange Building Company owned no property other than the lease, and because the stockholders in this corporation were probably willing either to sell their stock or have the corporation sell the lease, it follows that, if the latter course was followed, neither the corporation assignor nor its stockholders were interested in whether or not the assignee, Mr. Kerry, agreed to carry out the lease according to its terms. The assignor, however, included the assumption in the instrument of assignment.

It clearly appears that appellants were at all times represented by able counsel, who advised them concerning this and other phases of the transaction in connection with the lease.

Appellants argue that, since the parties believed that they were required to incur an assumption obligation by a direct contract with respondent, because, in their opinion, the latter's consent to an assignment of the lease was necessary, the express assumption of the lease in the assignment did not attract appellants' attention or that of their counsel, and that it was not intended that this language express any independent obligation in addition to the direct obligation which appellants assumed in the three party contract executed the same day.

We are not impressed with this argument. Certainly, language whereby the assignee of a lease assumes to carry out the terms thereof over a period

of almost thirty years, at a rental of thousands of dollars, could not have been treated casually or as of little consequence. Mistake of law and mistake of fact are two very different things.

Careful consideration of all the evidence convinces us that the trial court did not err in finding that the evidence did not sustain appellants' claim that the paragraphs above referred to were made part of the contract by mutual mistake of the parties. We are convinced that the evidence relied on by appellants in this connection nowise approximates the quantum of proof necessary, under the circumstances here shown, to justify a court in reforming a written contract.

■ Appellants attack the assumption clause in the assignment of the lease as void for want of consideration. They argue that it appears from the evidence that the agreed purchase price for all the capital stock of the Lumber Exchange Building Company was the same amount as the price agreed upon for a transfer of the lease; and that, this being true, it should be held as matter of law that there was no consideration for the assumption by appellants of future obligations under the lease.

Appellants having failed in their attack upon the assumption clause in the assignment, that instrument stands unimpeached and must be considered as a whole.

The assignment of the lease is sufficient consideration for the assumption by the assignee of all obligations under the lease. Such a transaction is somewhat analogous to the assumption by the purchaser of real estate of an existing mortgage thereon. This court has repeatedly held that, in such cases, the conveyance of land constitutes a valid consideration for the promise of the grantee to pay the mortgage. *Corkrell v. Poe,* 100 Wash. 625, 171 Pac. 522, 12 A. L. R. 1524; *Citizens Savings & Loan Society v. Chapman,* 173

Wash. 539, 24 P. (2d) 63; *Brewer v. Rosenbaum, ante* p. 218, 48 P. (2d) 566. See, also, cases cited below.

The supreme court of California, in the case of *Chase v. Oehlke,* 43 Cal. App. 435, 185 Pac. 425, considering a case in which it appeared that the assignee of a lease had agreed to pay the rent reserved therein, upheld a contract providing for the assumption of the lease by the assignee and also decided that the lessor could sue thereon. The California statute referred to in the case cited amounts to no more than the established law of this state.

The assignment of the lease being a valid consideration for the assumption thereof by the assignee, we cannot agree with appellants in their opinion that the evidence demonstrates that, in this instance, appellants' assumption of the lease was gratuitously thrown into the scale and is not binding upon them for want of consideration. The evidence does not so clearly indicate that such was the case as to warrant the court in carving out one portion of the contract and holding it void as a mere *nudum pactum.*

Appellants next argue that, the assignment never having been executed by appellants, the assumption clause therein contained is void under the statute of frauds. They raised this objection when the document was offered in evidence and consistently maintained their position at all times during the trial. They rely upon Rem. Rev. Stat., § 5825 [P. C. § 7745], declaring void any agreement that by its terms is not to be performed within one year from the making thereof, unless the same be in writing, signed by the party to be charged. In this connection, appellants cite the cases of *Chamberlain v. Abrams,* 36 Wash. 587, 79 Pac. 204; *Trimble v. Donahey,* 96 Wash. 677, 165 Pac. 1051; *Hendry v. Bird,* 135 Wash. 174, 237 Pac. 317, 240 Pac. 565; *Sunset Pacific Oil Co. v. Clark,* 171 Wash. 165, 17 P. (2d) 879.

Of the cases cited, the first two involved sections of the statute of frauds other than that above referred to. In the other two cases, it was held that part performance of a contract, obnoxious to the section now under discussion, would not relieve the contract from the bar of the statute. On the other hand, it has been held that complete performance of a contract, which would otherwise be void as neither signed nor to be performed within one year, takes the contract without the bar of the statute.

In the case of *Graves v. Jones*, 170 Wash. 552, 17 P. (2d) 46, it was held that an oral contract to buy an interest in a partnership was not void because within the bar of the section above referred to. In the course of the opinion, we quoted from 25 R. C. L. 461, as follows:

"The broad view is generally taken that the statute applies only to contracts not to be performed on either side, and not to a contract to be and fully performed on one side within the year, and therefore that the defendant cannot avail himself of the statute if the contract was to be and has been fully performed by the plaintiff within the year though it was not to be performed by him within the year."

The general rule is laid down in 27 C. J. 356, and again in 1 Williston on Contracts, § 504. Whether or not this court has adopted this general rule as applied to all cases, need not be here discussed.

As above stated, this court has repeatedly enforced as against the purchaser of real estate a clause in the instrument of conveyance to him to the effect that he assumes the mortgage upon the land; this, regardless of whether or not there was any written instrument whatsoever, signed by him, wherein he bound himself to make such payment. It has always been the rule in this state that the purchaser of land promising to pay a mortgage thereon is bound by his contract, though

unsigned by him. *Ordway v. Downey,* 18 Wash. 412, 51 Pac. 1047, 52 Pac. 228, 63 Am. St. Rep. 892; *Frazey v. Casey,* 96 Wash. 422, 165 Pac. 104; *Hargis v. Hargis,* 160 Wash. 594, 295 Pac. 742.

Appellants argue that the statute of frauds was not satisfied by the execution by appellants of the *tripartite* agreement accomplished on the same day as the assignment of the lease. The assignment, by its terms, provided that it should not become valid or binding until respondent's consent thereto should have been obtained. This consent was given on the same day by the agreement above referred to, signed by all the parties. In the case at bar, the two contracts now under discussion must be considered together; and, this being true, appellants, on the same day the assignment to them was executed, by a contract which they signed, obligated themselves in accordance with the terms of the assignment.

We hold that, in the case at bar, the statute of frauds does not avail appellants.

Appellants strenuously contend that the right of respondent to give or withhold its consent to any assignment of the lease expired with its consent to the first assignment thereof. Pages of appellants' briefs are devoted to this proposition, and many authorities are cited. Respondent cites authorities to the contrary and makes an able argument upon the proposition that, under the circumstances of this case, as disclosed by the record, respondent still had the right to grant or withhold its consent to the assignment of the lease to appellants.

We deem it unnecessary to pass upon this phase of the case. It was, at least, a question upon which reasonable minds might differ, and appellants might well have desired respondent's consent to the assignment to appellants; and the granting of such consent by re-

spondent, in our opinion, beyond question supported the passing of a valuable consideration from appellants to respondent. While it is true that, in this instance, the assumption of the lease by appellants may have been a consideration which now appears to appellants excessive, courts cannot, in view of changed business and economic conditions, determine questions based upon contracts of long standing in the light of subsequent events. At that time, appellants, of course, thought the lease a profitable investment, and it may well be that they regarded their assumption of the obligation thereof as of little importance.

It clearly appears that appellants, represented as they were by able counsel, procured respondent's consent to their purchase of the lease. They were careful to procure this consent when they purchased the lease, and again when they assigned interests therein to Messrs. Bush and Smith. In the *tripartite* contract, it is expressly recited that appellants "have applied to Puget Mill Company . . . for its written consent to the assignment." Appellants state that, at the time of their purchase of the lease, all parties believed that respondent still had the right to object to an assignment thereof, and that its consent was necessary to a valid assignment. Appellants now contend that they were mistaken in their then view of the law; but even though this may be true, it does not follow that they may repudiate their contract as void for want of consideration.

In this connection, as above stated, they cite copious authority to the effect that a covenant not to assign a lease without the landlord's consent does not run with the land (or with the lease) without an express agreement to that effect and, generally speaking, is not binding upon the assignee of an assignee. This rule, while established in many jurisdictions by judi-

cial decisions, has little basis in reason, as the desire of the landlord to select or approve the person who shall be his tenant is not unreasonable and applies with equal force to the successors in interest of the original tenant. The rule as contended for by appellants is often referred to as the "rule in *Dumpor's* case," (*Dumpor's Case*, 4 Coke 119-b) and is cited in 2 Thompson on Real Property, § 1407, and discussed in *Aste v. Putnam's Hotel Co.*, 247 Mass. 147, 141 N. E. 666, 31 A. L. R. 149. As above stated, we deem it unnecessary to enter upon a discussion of this legal proposition advanced by appellants, as the judgment appealed from must be affirmed upon other grounds.

The same is true as to appellants' argument that the giving of an unnecessary consent by respondent cannot be held sufficient consideration for appellants' promise. In the first place, this assumes that the consent which respondent accorded was unnecessary. This proposition was and is a disputed question. Respondent's written acceptance of appellants as its tenants was certainly of value to appellants. It made their position certain, which, when concerning a tenancy of such great value and covering such a long term, would add to the value of the lease to appellants as assuring their status in regard to their landlord. In determining the question, the position of the parties in 1923 must be considered, not the situation as it exists now. Appellants then, of course, believed that they were making a good bargain, and anything which tended to make their position more secure would appear to them to be to their advantage.

Then, it is well settled that a consideration sufficient to support a promise need not always, in the last analysis, have an actual value. In this instance, it may be assumed that whether or not respondent had the right to refuse its consent to an assignment of the

lease, could only ultimately be determined by the courts. The giving of its consent by respondent would constitute a valuable consideration for a promise, even though a possibility existed that, at the end of protracted litigation, it might be held that respondent had lost its right to accept or reject a new tenant. Of course, a consideration cannot be sham or frivolous or manifestly false, but in the case at bar, we are satisfied that a real controversy might have been waged before the courts as to the rights of respondent as they existed in 1923.

The matter is discussed in 1 Williston on Contracts, §§ 102, 102-a and 115. In the latter section, we find the following text:

"It is an 'elementary principle that the law will not enter into an inquiry as to the adequacy of the consideration.' This rule is almost as old as the law of consideration itself. Therefore anything which fulfils the requirements of consideration will support a promise whatever may be the comparative value of the consideration, and of the thing promised. Thus allowing a defendant to weigh boilers is sufficient consideration for a promise to give them up in good condition, and surrendering a document though it has no value is sufficient consideration for a promise to pay a large price. The surrender of a piece of paper on which a void guaranty had been written was sufficient consideration for a promise to pay ten thousand pounds. A quit-claim deed conveying such interest as the grantor may have is sufficient consideration though the grantor in fact had no interest. So delivering for record an invalid deed, or transferring worthless corporate stock."

The supreme court of the United States case of *Sykes v. Chadwick*, 18 Wall. 141, is in point. In the case cited, the court used the following language:

"At all events, the defendant when he was endeavoring to negotiate the sale of his property deemed

it of sufficient importance to give the note in question in consideration of the plaintiff joining in the deed, and releasing any contingent right she might have. This very act of hers may have been necessary, and we have a right to infer that it was deemed important, to the closing up of the transaction and securing the sale of the property. If any release is deemed requisite to confirm the title of lands with which one has been connected, though by a proper construction of the law he has no interest in them whatever, still such release will be a good consideration for a promise or for the payment of money.''

The liability of the lessee named in the lease for rent is, of course, absolute in the absence of fraud, and is based upon privity of contract. *Medgard v. Shimogaki,* 135 Wash. 527, 238 Pac. 574; *Huston v. Graham,* 169 Wash. 521, 14 P. (2d) 44; *Johnson v. Goddard,* 179 Wash. 493, 38 P. (2d) 208; *Cobb Healy Investment Co. v. Tall,* 181 Wash. 300, 42 P. (2d) 1107.

Liability of the assignee of a lease, who has not assumed the obligations thereof, is predicated upon privity of estate and may be terminated by his assignment of the lease. *Tibbals v. Iffland,* 10 Wash. 451, 39 Pac. 102. In the case of *DeLano v. Tennent,* 138 Wash. 39, 244 Pac. 273, 45 A. L. R. 766, this court considered the obligation of the assignee of a lease who had expressly assumed the burden thereof, and held him liable for the performance of the contract.

In the earlier case of *Harvard Investment Co. v. Smith,* 66 Wash. 429, 119 Pac. 864, it is possible that a different rule was laid down. The case last cited was not referred to in the case of *DeLano v. Tennent, supra,* and, in so far as any inconsistency may exist between the two cases, the older case must be held to have been overruled by the later, which we are convinced correctly declares the law.

We have discussed at considerable length the questions urged by appellants, and have touched upon some which may well not be absolutely necessary to a determination of the issues here presented. We are, however, entirely satisfied that appellants are lawfully obligated, as the result of their conduct and solemn contracts based upon a consideration sufficient in law to support their promises, to carry out the provisions of the lease, and that the trial court correctly so held.

This view of the matter renders discussion of appellants' assignment of error based upon the judgment rendered against appellant Katherine G. Kerry unnecessary.

The judgment appealed from is affirmed.

MAIN, TOLMAN, GERAGHTY, and STEINERT, JJ., concur.