**PUGET SOUND PULP AND TIMBER CO., a corporation, Appellant,**

v.

**Joe A. O'REILLY, Appellee.**

**Joe A. O'REILLY, Cross-Appellant,**

v.

**PUGET SOUND PULP AND TIMBER CO., a corporation, Cross-Appellee.**

**No. 14906.**

United States Court of Appeals
Ninth Circuit.

Dec. 31, 1956.

Rehearing Denied Feb. 11, 1957.

Evans, McLaren, Lane, Powell & Beeks, Vaughn E. Evans, Martin P. De-

tels, Jr., W. Byron Lane, Seattle, Wash., for appellant Puget Sound Pulp & Timber Co.

Rummens, Griffin, Short & Cressman, Kenneth P. Short, Seattle, Wash., Max Bernbaum, Beverly Hills, Cal., for appellant Joe A. O'Reilly.

Before LEMMON and FEE, Circuit Judges, and MURRAY, District Judge.

MURRAY, District Judge.

On May 22, 1946, Joe A. O'Reilly and Puget Sound Pulp and Timber Company entered into an agreement, which among other things provided that a corporation, to be known as Bellingham Paper Products Company was to be formed with a capital stock of $200,000, of which O'Reilly was to contribute a paperboard machine and $2,000 in cash for a total contribution valued at $50,000, and receive one-fourth of the capital stock, and Puget Sound Pulp and Timber Company was to contribute $150,000 in cash and receive three-fourths of the capital stock. The agreement of May 22, 1946, contained the further provision that when the new corporation was organized, it would enter into a five year agency agreement with O'Reilly, whereby O'Reilly would sell the products of the new corporation, and receive as compensation for such services 3% commission on net sales of the company, together with reimbursement of certain expenses. There were other provisions in the agreement of May 22, 1946, which are not material to this case.

The new corporation, Bellingham Paper Products Company, was formed, a building to house the paper machine was constructed on land owned by Puget Sound Pulp and Timber Company, and the plant went into production in May, 1947. The Bellingham Paper Products Company and O'Reilly agreed upon an agency agreement whereby O'Reilly became agent of the Paper Products Company, and reduced the same to writing, but the written agreement was never signed by either party. However, the parties to this action agree that the terms set forth in the unsigned instrument are the terms agreed upon with respect to the agency agreement.

Under the unsigned agreement O'Reilly was employed by the Bellingham Paper Products Company as its exclusive agent for the sale of the products of its plant, and his compensation was fixed at 3% of the net sales of said company. In view of the findings of the trial court and the decision of this court, it is unnecessary to lengthen this opinion by a recital of the other provisions of the agreement.

O'Reilly commenced selling the paper products of the Bellingham Paper Products Company mill under the unsigned agency agreement when the mill went into production in May, 1947. Later in 1947 all O'Reilly's stock in the Bellingham Paper Products Company was purchased by the Puget Sound Pulp and Timber Company for $135,000 in cash and the Paper Products Company was dissolved, Puget Sound Pulp and Timber Company taking over its assets, operating its plant and assuming all of its obligations, including the agency agreement with O'Reilly. O'Reilly continued selling the products of the Paperboard Division of the Puget Sound Pulp and Timber Company and continued to receive as compensation 3% of the net sales of that division through December 31, 1948.

During December, 1948, or January, 1949, O'Reilly, in a conversation with a Mr. Roberg, Vice President of the Puget Sound Pulp and Timber Company, in charge of the Paperboard Division, stated that the profits of the Paperboard Division were not very substantial, and that as a temporary measure he would reduce his compensation to 1½% of the net sales until the business became profitable. He was taken at his word, and commencing with January 1, 1949, O'Reilly was paid 1½% commission on the net sales of the Paperboard Division, although he continued doing the same work he had done previously, and this arrangement, whereby O'Reilly received 1½% commission continued from January 1, 1949, until the last day of March,

1952, when O'Reilly's employment with Puget Sound Pulp and Timber Company was terminated under the circumstances hereinafter set forth. During this period from January 1, 1949, through February, 1952, O'Reilly's commission, figured upon the basis of 1½%, amounted to $59,572.04.

In late 1950 or early 1951, O'Reilly acquired another paperboard machine and attempted to persuade Puget Sound Pulp and Timber Company to purchase the same from him and install it in their Paperboard Division plant. Failing to interest the Puget Sound Company in purchasing the paperboard machine, O'Reilly organized the California Paperboard Co. on his own and started construction of a plant in Richmond, California to house his machine. This plant went into production in November, 1951.

Puget Sound Pulp and Timber Company, not wanting O'Reilly to represent its Paperboard Division while at the same time having an interest in a competing company, and feeling that O'Reilly, by organizing the California Paperboard Co. and making ready to commence production in Richmond, California, had breached the provisions of his agency agreement, in the first quarter of 1951 commenced negotiations with O'Reilly, looking toward the termination of O'Reilly's employment. Puget Sound Pulp and Timber Company desired the termination date to be September 1, 1951; O'Reilly insisted the date should be December, 1952, and it was finally agreed in July, 1951, that O'Reilly's compensation would be terminated on the last day of February, 1952. In accordance with this, O'Reilly received compensation upon the basis of 1½% of the net sales through the month of February, 1952.

After the payment of the February, 1952, commissions to O'Reilly at the rate of 1½%, Puget Sound Pulp and Timber Company heard no more from O'Reilly until June, 1953, at which time O'Reilly made a demand for an additional 1½% commission on all sales from January 1, 1949, through February, 1952. His demand being unsuccessful, he instituted this action, which in due course was tried before the Court sitting without a jury. The Court entered Findings of Fact and Conclusions of Law and Judgment in O'Reilly's favor in the amount of $59,572.04, and Puget Sound Pulp and Timber Company appeals. O'Reilly filed a cross appeal because of the Court's refusal to allow him interest on each installment of his commission as they became due.

Appellant contends that the trial court erred in finding that the conversation between O'Reilly and Roberg in December, 1948, or January, 1949, did not result in a modification of O'Reilly's agency agreement. It must be borne in mind in connection with this specification of error that regardless of what decision this Court might reach were it considering the evidence in the first instance, it may not disturb the trial court's finding unless it is clearly erroneous. Appellant recognizes this rule, but insists the Court's finding is clearly erroneous. After considering carefully all of the evidence concerning the conversation between O'Reilly and Roberg, as well as the conduct of the parties following said conversation, this Court cannot say that the trial court's finding that there was no modification of the agency agreement is clearly erroneous, and therefore that finding of the Court must stand.

The trial court further found "that in December, 1948, or January, 1949, plaintiff (O'Reilly) without consideration or promise of consideration, advised defendant Puget Sound Pulp and Timber Company that he would temporarily reduce his commission to 1½% of net sales of the Paperboard Division of defendant corporation *and would in effect postpone collection of the remainder thereof.* * * * " Appellant likewise contends the italicized portion of the above finding is clearly erroneous. While it is true there is absolutely no direct evidence in the record of any discussion regarding a postponement of collection of commissions, that is the neces-

sary effect of the conversation between Roberg and O'Reilly, when it is found, as it has been by the trial court, that there was no modification of the agency agreement.

■ Appellant next contends that the Court erred in not finding that the agreement reached in July, 1951, concerning the termination date of O'Reilly's employment by appellant constituted an accord and satisfaction of the claim which is the subject of this action, and that O'Reilly was not estopped from bringing this suit on the original agency agreement. This contention is without merit. There cannot be an accord and satisfaction unless there is a claim or demand made by one party upon the other and an agreement to settle it. At the time of the July, 1951, agreement, there had been no claim or demand made by appellee upon appellant for the additional compensation that was due him under the agency agreement. The only difference between them at that time concerned the date of termination of appellee's employment. Any accord and satisfaction which resulted from the agreement they reached at that time operated only upon the difference concerning the termination date of appellee's services. In other words, an accord and satisfaction, like any other contract, requires a meeting of the minds of the parties upon a proper subject. 1 Am. Jur. Accord and Satisfaction, Sec. 4, p. 217. Meyer v. Strom, 37 Wash.2d 818, 226 P.2d 218. The present claim of O'Reilly, which appellant contends was discharged by accord and satisfaction in July, 1951, had not been made at that time, was not discussed, and was not in the mind of either party, and hence there could not have been a meeting of the minds with reference to that claim.

■ Appellant further claims that appellee, by accepting the payment to him of the monthly commissions at the rate of 1½% of net sales, with each of which payments a statement was furnished, and remaining silent in regard to any further claim which he might have was estopped from thereafter claiming the additional 1½% to which he was entitled under his agency agreement. A like contention under similar circumstances was considered by the Supreme Court of the State of Washington and rejected in the case of Bellingham Securities Syndicate v. Bellingham Coal Mines, 13 Wash.2d 370, 125 P.2d 668, 677. In that case the lessor under the agreement was to have received a royalty of 12½ cents per ton of coal mined by the lessee plus 25% of the net profits of the operation as computed pursuant to a formula agreed upon. For 21 years the plaintiff accepted 12½ cents per ton of coal mined, and in addition approximately $283,000 in distribution of profits for about 15 of the 21 years, and thereafter sued for some $83,000 claimed to be unpaid on profit distribution. There as here, defendant claimed an accord and satisfaction and an estoppel since plaintiff had been furnished with statements with each royalty payment, and had failed to make any claim for any payments over and above those received. The Washington Supreme Court rejected both the accord and satisfaction claim and the estoppel claim, and in connection with the latter said:

"Respondent may not successfully urge in support of its affirmative defense of estoppel that it was misled by appellant's receipt of reports and royalty payments without objection. It should be borne in mind that respondent knew, as well as appellant, what the terms of the lease were hence where parties have equal means of knowledge there can be no estoppel in favor of either. Wilkinson v. Lieberman, 327 Mo. 420, 37 S.W.2d 533.

"Respondent has not changed its position in reliance upon any of the alleged representations of appellant. Respondent did not make any expenditures in developing and equipping the mine which it was not obligated to make under the terms of the lease. The only detriment which the respondent will suffer by

having to pay the royalty due is that entailed in performance of its obligation under the lease to pay royalty. The mere failure to pay what one owes is not a change of position which will support an estoppel * * *."

It is to be noted in connection with this case that there has been no change in appellant's position in reliance on O'Reilly's failure to make his claim for the additional 1½% commission prior to the time that he did.

■ Appellant's last specification of error, outside of the general one that the judgment is contrary to the law and the evidence, is that the trial court erred in its finding and conclusion that appellant had failed to sustain its burden of proving its defense of the Statute of Frauds, RCW 19.36.010. The defense of the Statute of Frauds is one that is required under the provisions of Rule 8(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., to be pleaded as an affirmative defense.

In our view there was not a sufficient pleading of the Statute of Frauds. However, the trial court apparently considered that the issue of the Statute of Frauds was in the case because he made the finding that appellant had failed to prove its affirmative defense of the Statute of Frauds, among others, and this court has considered the question as though it had been properly presented by pleading, and finds there is no merit in appellant's specification of error with reference to the Statute of Frauds for the simple reason that the contract sued upon herein has been fully performed by O'Reilly.

"Another general limitation upon the assertion of the Statute of Frauds arises in cases where the contract has been executed by performance on one or both sides. The Courts have repeatedly reiterated that the Statute of Frauds only applies to executory as distinguished from executed contracts; if an oral contract, otherwise within the Stat-ute, is completely executed or performed it is taken out of the operation of the Statute * * *." 49 Am.Jur.—Statute of Frauds, Sec. 550.

This general rule was approved by the Supreme Court of Washington in the case of Puget Mill Co. v. Kerry, 183 Wash. 542, 49 P.2d 57, 100 A.L.R. 1220, which involved the same section of the Statute of Frauds as is here involved, i. e. an agreement that by its terms is not to be performed within one year from the date of the making thereof. Any other rule in the case of a completely executed contract would have the effect of converting the Statute of Frauds into a cloak for fraud rather than a shield against it, as it was intended.

■■ After pronouncing an oral decision at the conclusion of the trial, the trial court set a further meeting with counsel for settlement of forms of findings of fact and conclusions of law and judgment. When counsel for appellee presented the findings of fact and conclusions of law and judgment, the Court, of its own motion, struck out the provisions therein allowing interest on each monthly installment from the date when it became due, and appellee cross appealed from this action of the Court.

Sec. 19.52.010 RCW, section 7299, Rem.Rev.Stat., provides in part as follows:

"Every loan or forbearance of money, goods, or thing in action shall bear interest at the rate of six percent per annum where no different rate is agreed to in writing between the parties * * *."

In the early Washington case of Wood v. Cascade Fire & Marine Insurance Co., 1894, 8 Wash. 427, 36 P. 267, 269, which stands unreversed after all these years, the Washington Supreme Court said:

"Appellant's second objection,— that the judgment is excessive, in that it included interest on the amount found due from the time the same became payable,—in our

opinion is without merit. *Interest on money detained after it is due and payable is recoverable as matter of legal right."*

The holding in the Wood case, supra, has been repeated by the Washington Supreme Court many times subsequently, although not in such emphatic language. In the face of this Washington statutory and case law, the trial court, in our opinion, was without authority to withhold interest on the amounts which he found to be due appellee.

The judgment on the appeal is affirmed. The judgment on the. cross appeal is reversed, and the case remanded to the District Court with directions to restore to the judgment the stricken provision concerning interest.