[No. 37976.     Department Two.     January 5, 1967.]

ROBERT C. BROWNING, *Appellant*, v. O. ARTHUR JOHNSON et al., *Respondents*.*

*Reported in 422 P.2d 314.

*Blair, Thomas, O'Hern & Daheim* and *James E. O'Hern,* for appellant.

*Greive & Law,* by *Charles J. Law,* for respondents.

LANGENBACH, J.†—This is the tale of two osteopaths who attempted a business transaction. The heart of the case is a certain promise which Dr. Browning made to Dr. Johnson. The sole issue is whether Dr. Browning is to be bound by his promise.

Browning and Johnson entered into a contract of sale whereby Browning was to sell his practice and equipment to Johnson. Both parties and their attorneys believed the contract made to be completely valid and enforceable. Before the contract's effective date, Browning changed his mind about selling and sought to be released from the obligations he had undertaken. Johnson, at first, demurred. Later, however, upon Browning's promise to pay Johnson $40,000 if Johnson would give up the contract of sale, the parties entered into a contract (the contract here in issue) canceling the contract of sale.

Some months later Browning tired of his bargain and brought this action for declaratory judgment and restitution. In the course of this action the trial court concluded that the canceled sale contract had lacked mutuality

---

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

and had been too indefinite in its terms for enforcement. Nevertheless, it concluded that the contract canceling the sale contract was supported by "adequate consideration." Browning has appealed from that decision. He brought 24 errors which pertain mainly to the trial court's failure to adopt his proposed findings. He insists that his promise to pay Johnson was unsupported by consideration and that the promise was a child of mutual mistake.

■■■■ We should first say a word about terminology. Courts are loath to inquire into the "adequacy" of consideration, that is, into the comparative value of the promises and acts exchanged. As we said in *Rogich v. Dressel*, 45 Wn.2d 829, 843, 278 P.2d 367 (1954):

> [W]e must apply the rule followed in this state that parties who are competent to contract will not be relieved from a bad bargain they make unless the consideration is so inadequate as to be constructively fraudulent . . . .

But "adequacy" of consideration, into which courts seldom inquire, is to be distinguished from the legal "sufficiency" of any particular consideration. The latter phrase is concerned not with comparative value but with that which will support a promise. "[A]nything which fulfills the requirements of consideration will support a promise whatever may be the comparative value of the consideration, and of the thing promised." 1 Williston, Contracts § 115, cited in *Puget Mill Co. v. Kerry*, 183 Wash. 542, 558, 49 P.2d 57, 100 A.L.R. 1220 (1935). "[T]he relative values of a promise and the consideration for it, do not affect the sufficiency of consideration." Restatement, Contracts § 81 (1932). This distinction is sometimes lost sight of. In the instant case, Browning bargained for Johnson's act of giving up the contract of sale. The issue is whether the law regards Johnson's act of giving up that contract as legally "sufficient" consideration to support Browning's promise to pay him for such an act. The trial court concluded that giving up the contract of sale was "adequate" consideration for Browning's promise.

Whether there exists something which will support a promise and which therefore may be called legally suf-

ficient consideration is obviously prior to the question of whether that consideration is adequate when compared to the value of the promise given in exchange for it. Therefore, whether the trial court meant (1) that giving up the contract of sale was a bargained-for act legally sufficient to support Browning's promise, or (2) that giving up the contract of sale was sufficient consideration, *and moreover*, consideration not so inadequate as to be constructively fraudulent is not important. We hold that Browning's promise was supported by sufficient consideration and there is nothing in this case which induces us, under the *Rogich* formulation, to consider the relative values of the things exchanged.

■■■■ This is a unilateral contract. See *Cook v. Johnson*, 37 Wn.2d 19, 221 P.2d 525 (1950). A unilateral contract is one in which a promise is given in exchange for an act or forbearance. Here, Browning gave Johnson a promise to pay $40,000 in exchange for Johnson's act of giving up the contract of sale. Sufficiency of consideration in unilateral contracts is discussed by Professor Williston in his treatise, Contracts § 102 (3d ed. 1957). There he indicates that the requirement of sufficient consideration to support a promise is met by a detriment incurred by the promisee (Johnson) or a benefit received by the promisor (Browning) at the request of the promisor. "That a detriment suffered by the promisee at the promisor's request and as the price for the promise is sufficient, though the promisor is not benefited, is well settled." Williston, *supra*. This has been the law in Washington for over 50 years. *Harris v. Johnson*, 75 Wash. 291, 294, 134 Pac. 1048 (1913). The question then becomes the nature of a detriment. Detriment is defined by Williston as the giving up of "something which immediately prior thereto the promisee was privileged to retain, or doing or refraining from doing something which he was then privileged not to do, or not to refrain from doing." Williston, *supra*, § 102A. We have already had occasion to quote this definition with approval. *Luther v. National Bank of Com-*

*merce,* 2 Wn.2d 470, 483, 98 P.2d 667 (1940). We have employed the definition for many years, see, *e.g., Harris v. Johnson, supra,* where we said:

"... Indeed there is a consideration if the promisee, in return for the promise does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not." 9 Cyc. 311 *et seq.*

The problem presented by this case is not a new one. Over a century ago, in England, Brooks obtained a certain document from Haigh believing that it was a guarantee, and promised to pay a certain sum of money in consideration of Haigh's giving it up. The guarantee proved to be unenforceable. Haigh sued Brooks for the money promised. The court said:

[T]he plaintiffs were induced by the defendant's promise to part with something which they might have kept, and the defendant obtained what he desired by means of that promise. Both being free and able to judge for themselves, how can the defendant be justified in breaking this promise, by discovering afterwards that the thing in consideration of which he gave it did not possess that value which he supposed to belong to it? It cannot be ascertained that that value was what he most regarded. He may have had other objects and motives; and of their weight he was the only judge. *Haigh v. Brooks,* 10 A. & E. 309, 320 (1839).

Similarly here, of Browning's objects and motives, he was the only judge.[1]

---

[1] On December 20, 1962, Browning wrote Johnson a 6-page letter which read, in part: "Dear Art, . . . All I can honestly say is that it would have been a real error to have gone through with it [the Everett venture] . . . . [T]he area south of Everett in regard to housing, schools and recreation [is] far below what we have here in Greater Tacoma. Young Steve has been having a real bad time of it this year at the Academy and it is most imperative, because of this, that he remain . . . there . . . . Muriel and the children are very happy we are staying . . . they didn't want to leave . . . . I will be most content to be back in Tacoma in practice an [*sic*] able to live and play here as well. We are looking forward to boating again come spring. . . . I want to be back among the people who know me . . . . Sincerely Bob."

Over a quarter of a century ago, in Washington, Fleishbein's sister, Bertha, purchased some land which was subject to a first mortgage. Fleishbein later purchased the mortgage. Bertha wanted to obtain a loan by executing a first mortgage on the property and so she asked her brother to release his mortgage on the property and promised to give him a second mortgage as soon as she had obtained her loan. Fleishbein, in consideration of that promise, released the mortgage. At the time the mortgage and mortgage note were barred by the statute of limitations. The trial court held that the release of the unenforceable mortgage was "sufficient consideration." This court affirmed. *Fleishbein v. Thorne,* 193 Wash. 65, 74 P.2d 880 (1937).

In 1935 the case of *Puget Mill Co. v. Kerry, supra,* came before this court. The following discussion (appearing in 183 Wash. pp. 556, 559), while not entirely necessary there is persuasive here. So much so that we feel justified in quoting at some length.

> It clearly appears that appellants, represented as they were by able counsel, procured respondent's consent to their purchase of the lease. . . . Appellants state that, at the time of their purchase of the lease, all parties believed that respondent still had the right to object to an assignment thereof, and that its consent was necessary to a valid assignment. . . .
>
> . . . . .
>
> [A]ppellants' . . . [argue] that the giving of an unnecessary consent by respondent cannot be held sufficient consideration for appellants' promise. In the first place, this assumes that the consent which respondent accorded was unnecessary. . . . In determining the question, the position of the parties in 1923 must be considered, not the situation as it exists now. Appellants then, of course, believed that they were making a good bargain, and anything which tended to make their position more secure would appear to them to be to their advantage.
>
> Then, it is well settled that a consideration sufficient to support a promise need not always, in the last analysis, have an actual value. In this instance, it may be assumed that whether or not respondent had the right to refuse its consent to an assignment of the lease, could only ulti-

mately be determined by the courts. The giving of its consent by respondent would constitute a valuable consideration for a promise, even though a possibility existed that, at the end of protracted litigation, it might be held that respondent had lost its right to accept or reject a new tenant. Of course, a consideration cannot be sham or frivolous or manifestly false, but in the case at bar, we are satisfied that a real controversy might have been waged before the courts as to the rights of respondent as they existed in 1923.

The matter is discussed in 1 Williston on Contracts, §§ 102, 102-a and 115. . . .

. . . .

The supreme court of the United States case of *Sykes v. Chadwick,* 18 Wall. 141, is in point. In the case cited, the court used the following language:

"At all events, the defendant when he was endeavoring to negotiate the sale of his property deemed it of sufficient importance to give the note in question in consideration of the plaintiff joining in the deed, and releasing any contingent right she might have. This very act of hers may have been necessary, and we have a right to infer that it was deemed important, to the closing up of the transaction and securing the sale of the property. If any release is deemed requisite to confirm the title of lands with which one has been connected, though by a proper construction of the law he has no interest in them whatever, still such release will be a good consideration for a promise or for the payment of money."

That the parties cited none of the above cases in their briefs makes these cases no less appropriate. It is clear that at the time of contracting, the parties, equally informed, of equal bargaining power and equally assisted by able counsel, freely bargained for, and freely settled upon an exchange which each felt would be beneficial to him. Their mutual assent proved this mutual expectation of benefit for the law must presume that no man bargains against his own interest. Subsequent events revealed that the contract, fully acceptable to both parties when made, was less beneficial to the promisor than he and his attorney had, at the time of contracting, thought. But this *alone* cannot be reason enough for allowing the promisor to avoid it. There

was no misrepresentation, no fraud, and no duress. The promisor Browning wanted Johnson to give up the sale contract and to secure the performance of that act, he solemnly promised to pay Johnson $40,000. Johnson, induced by Browning's urgent pleas and solemn promise, gave up the sale contract. The legal detriment suffered by Johnson through Browning's inducement will support Browning's promise to pay.

Finally, we reach Browning's argument that the parties entered into this contract under the influence of a mutual mistake. There is no doubt that a contract can be supported by sufficient consideration and yet be voidable for mistake. But we do not reach that issue.

A case will be considered in this court only on the same theory upon which it was presented in the trial court. *Graff v. Geisel*, 39 Wn.2d 131, 138, 234 P.2d 884 (1951). In the instant case, the complaint alleged lack of consideration in the contract of sale and therefore lack of consideration in the contract of cancellation. It sought rescission of the contract of cancellation and restitution. The statement of facts reveals that the case was tried on a theory of lack of consideration. The only testimony which seemed to lay a foundation for the mutual mistake argument was elicited from one of Browning's witnesses by Johnson's counsel. Browning's counsel completely ignored it on re-direct and did not pursue a similar line of questions with any of the witnesses. Finally, the oral decision of the trial judge showed that he considered the case as proceeding alone upon a theory of lack of consideration as a ground for rescission.

The first hint that a theory of mutual mistake was in the case appeared *after* trial was over and the oral decision rendered. It entered the case in the form of a proposed conclusion of law submitted by Browning. The rule that a case will be considered in this court only on the theory upon which it was presented, tried and determined below would be soon vitiated, if to avoid it, one, having lost on the theory

of his choice, had only to submit proposed conclusions of law on every conceivable theory left and thus bring them here for trial.

The judgment is affirmed.

ROSELLINI, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.

June 26, 1967. Petition for rehearing denied.