[No. 24707. Department Two. January 9, 1934.]

G. G. SCHNELLER, *Appellant*, v. WALTER F. HAYES, *Respondent*.[1]

*W. A. Toner* and *H. B. Noland,* for appellant.

*Lehrer & Marquis,* for respondent.

GERAGHTY, J.—Plaintiff, G. G. Schneller, sued to enjoin defendant, Walter F. Hayes, from engaging in business as an optometrist or optician in the city of Walla Walla, in violation of the terms of a written contract. The contract was entered into August 24, 1932, and is as follows:

"THIS AGREEMENT, made and entered into this 24th day of August, 1932, by and between G. G. Schneller, party of the first, of Walla Walla, Washington, and Walter F. Hayes, party of the second, of same place, WITNESSETH:

[1]Reported in 28 P. (2d) 273.

"That *t*hereas [sic], the party of the first part is now conducting as proprietor in the city of Walla Walla, Washington: the business and occupation of optometry and optician and the party of the second part is now and has been employed by first party in such business and occupation. In consideration of such employment, the second party agrees that at the termination of such employment, that second party will not thereafter enter into business either as owner or part owner of optometry and optician in the city or within one mile of the corporate limits thereof.

"In Witness *T*hereof [sic], the parties hereto have hereunto set their hands and seal the day and year first in this instrument written.

(Sd.) G. G. Schneller (Seal)
Party of the first part
(Sd.) Walter F. Hayes (Seal)
Party of the second part"

The plaintiff was engaged in business in the city of Walla Walla as an optometrist and optician. The defendant was a licensed optician, and had been employed as a traveling salesman for the American Optical Company. He had become acquainted with plaintiff through business calls upon him, and in the early part of 1932, they had discussed the possibility of defendant's resigning his position with the American Optical Company and taking employment with plaintiff. On June 1st, as testified by defendant, or July 1st, as testified by plaintiff, they reached an agreement that defendant would come to Walla Walla August 1st and take employment with plaintiff. Following this agreement, which was not reduced to writing, defendant resigned his job with the American Optical Company, and arranged to remove his wife and children from Montana, where he then lived, to Walla Walla.

Subsequent to this agreement, and a few days after resigning his job, defendant received a letter from

plaintiff in relation to a written contract. Plaintiff testified he wrote defendant that he would require him to sign a written contract agreeing not to engage in the optical business, as owner or part owner, in Walla Walla, after the termination of his employment; defendant testified that the plaintiff's letter only mentioned that he would require a written contract. Defendant removed his family to Walla Walla, and entered the employment of plaintiff August 1, 1932. Shortly thereafter, plaintiff submitted to him a form of contract, which he refused to sign on account of some objection. Later, the contract above quoted was signed by the parties.

Defendant was paid thirty-five dollars a week from August 1st to the close of the year 1932, when plaintiff reduced his weekly pay to thirty dollars. He received this weekly wage until March. About that time, plaintiff complained of the condition of his business, and told defendant he would have to cut him to one hundred dollars a month, or possibly employ him only half time. In the early part of March, defendant requested plaintiff for a week off to visit relatives in Portland. He testified that, before going, plaintiff advised him that, in view of the condition of business in Walla Walla, it might be well for him to look for employment while in Portland. On his return from Portland, he went to plaintiff's place of business to have a definite understanding about his future employment. He testified:

"I said I wanted a definite understanding as to what he was going to do about work, and if he cut me to half time it would be only fifteen dollars per week, and I wanted it understood what we were going to do. He said there was no business and that he had a hard time paying his bills and I said that I could not live for that and pay my house rent and support my family on that. I told him that. He said

that he did not know what he could do, because business was so and so, so I made it understood right there. I said, 'If you cannot pay me what you promised me, I will have to do something else.' I said, 'I will have to start a place of my own.' I told him that right there at his place as plain as I am telling you here. . . . He said that he could not afford to do more than that, and I said all right, and I walked out of the shop.''

This interview terminated defendant's employment with plaintiff, and shortly thereafter he set up business in Walla Walla as an optician, under the name of Hayes Optical Company. He advertised in the newspapers and mailed postal cards to several hundred persons, taken from local telephone books. Other than the fact that one customer of the plaintiff received one of the postal cards, there is no evidence warranting a finding that defendant resorted to any unfair practices or took advantage of his former connection with plaintiff's business.

The court denied injunctive relief and dismissed the action. This appeal follows.

The contract sued on suggests two questions: (1) Was there a consideration to support it? (2) Is there such mutuality of obligation as will sustain an action for equitable relief?

■ Upon the question of consideration, it is apparent from the language of the contract itself that the respondent was already employed by appellant. His employment was by the week. August 24th, the date of the contract, was in the middle of the week. Appellant was bound to respondent for that week's employment. The contract did not promise any additional employment. In fact, it is clearly not a contract of employment, but rather an ancillary unilateral engagement on the part of respondent. It promised respondent nothing in the way of future employment,

and stipulated nothing as to wages. Courts will not ordinarily undertake to weigh the adequacy of consideration. The parties, being competent, in the absence of any undue influence or overreaching, are permitted to make their own contract. *Nelson v. Brasington,* 64 Wash. 180, 116 Pac. 629, Ann. Cas. 1913A, 289. But in this case the contract is wholly lacking in consideration moving to respondent.

■ But if we assume the contract of the parties to be bilateral and based upon mutual executory promises, appellant would not be entitled to injunctive relief. Appellant's promise of employment could be terminated at his pleasure, and would not be a sufficient consideration for the promise of the respondent. This view of the law applicable to the case at bar is illustrated by the opinion of Circuit Judge Woolley, in *Meurer Steel Barrel Co. v. Martin,* 1 Fed. (2d) 687. In that case, plaintiff brought an action to recover damages from defendant for breach of a contract, wherein the plaintiff had granted defendant the right to practice an invention for the life of a patent owned by plaintiff. The district court found the contract void for want of mutuality, because terminable on notice at the will of plaintiff. In disposing of the case upon appeal, Judge Woolley said:

"In discussing this question it should be noted that it arose in an action at law, not in an action in equity, and that the thing sought by this action is damages for a breach of contract, not equitable relief by specific performance. With this in mind we feel that the court fell into error in failing for the moment to distinguish between want of mutuality as a ground for invalidating a contract and want of mutuality as a ground for denying the equitable remedy of specific performance.

"There is a recognized difference in law between the validity of a contract containing a provision for its termination by notice and the enforcement of such

a contract in equity. The cases hold generally that a contract terminable on notice (if otherwise valid) is not for that reason void for want of mutuality of obligation, and for breach thereof an action will lie at law although the same contract may not, because of such provisions, be enforcible in equity. *Realty Advertising & Supply Co. v. Englebert Tyre Co.,* 89 Misc. Rep. 371, 151 N. Y. S. 885; *McCall v. Wright,* 198 N. Y. 143, 91 N. E. 516, 31 L. R. A. (N. S.) 249; *Philadelphia Ball Club v. Lajoie,* 202 Pa. 210, 51 A. 973, 58 L. R. A. 227, 90 Am. St. Rep. 627; *Cincinnati Exhibition Co. v. Marsans* (D. C.), 216 F. 269; *Brooklyn Baseball Club v. McGuire* (C. C.), 116 F. 782.

"As affecting the validity of a contract the distinction is based not upon equality of obligation but upon mutuality of consideration. As an unilateral contract is not founded on mutual promises, the doctrine of mutuality of obligation is inapplicable to such a contract. It is applicable, however, to a bilateral contract containing mutual executory promises because there both parties are bound by reciprocal obligations and the promise of one is the consideration for the promise of the other. If for any reason the promise of one party is not binding upon him, it is not a sufficient consideration for the promise of the other and the contract is void for want of consideration. . . .

"If, for instance, an entirely valid contract contain a provision for its termination by one party on notice to the other, though enforcible at law, courts of equity will not, because of such provision, enforce it by granting equitable relief, as specific performance, but will leave the aggrieved party to his remedy at law. This is because the court will not grant equitable relief on a contract where one party can nullify its action by exercising his reserved power to terminate it."

We do not overlook the allegation in appellant's complaint of the benefit to respondent in the instruction and experience he would receive while in appellant's employ. But this consideration is not mentioned in the agreement, and the evidence does not

disclose what instruction he received or what experience of value he acquired during his service. He was a licensed optician, employed by a large optical organization, and presumably was thought competent for employment by appellant. There is no suggestion that he entered upon an apprenticeship.

There is another view of the case that should bar equitable relief. While the courts sometimes enjoin the breach of covenants binding one of the parties not to engage in business, they do so only where the contract is reasonable as to time or area. *Kinney v. Scarbrough Co.*, 138 Ga. 77, 74 S. E. 772, 40 L. R. A. (N. S.) 473. The contract here is unlimited as to time, and its enforcement would forever prohibit respondent from carrying on his business in the city of Walla Walla, and this in the face of the fact that he was induced to remove his family there on the promise of employment by appellant at an agreed compensation— a promise appellant was either unwilling or unable to carry out.

We think the trial court was fully warranted in denying an injunction, and its judgment will be affirmed.

BLAKE, TOLMAN, and HOLCOMB, JJ., concur.

BEALS, C. J., concurs in the result.