[No. 26816. Department One. November 22, 1937.]

CAROLINE MEYER, *Respondent,* v. GUSTAVE ESCHBACH et al., *Appellants.*[1]

[1]Reported in 73 P. (2d) 803.

E. N. *Steel* and *Geo. F. Yantis,* for appellants.

*Julia Waldrip Ker* and *Harold P. Troy,* for respondent.

SIMPSON, J.—This suit was brought by the plaintiff to have set aside the sale of seven hundred shares of stock in the Olympia Brewing Company made by her to defendants upon the ground that the sale was fraudulent.

Plaintiff alleges in her complaint that the sale was made of the Olympia Brewing Company stock on or about December, 1936, at the solicitation of the defendants; that plaintiff had no knowledge of the true value of such shares of stock and relied upon representations of defendants, who were aware of the value of the stock; that the true value of the stock at the time the sale was made was $6,300; that plaintiff is a widow ninety years of age and at the time of the sale resided with the defendants.

Defendants answered, admitting that they had purchased the shares of stock from the plaintiff, but contended that the sale was made on May 4, 1935; that they had no knowledge of the value; that they did not make any representations to plaintiff as to its value, and denied that the true value of the stock at the time of the sale was $6,300; that the purchase of the stock by them was made in good faith at the solicitation of plaintiff and without any purpose of defrauding her.

The case was tried to the court, and after the trial a memorandum decision was handed down as follows:

"In this case there was no fraud or overreaching; on the other hand, the transaction was above board

and in the best of good faith. The plaintiff is a woman past ninety years of age, in many ways unusually keen and alert. Notwithstanding this, she is not a person who is accustomed to business dealings, having spent the greater portion of her working life doing domestic work, and not now being able to handle her property as efficiently as she did at one time; and, having become dissatisfied with the stock in controversy because it had paid no dividends, which she called interest, the defendants, out of the goodness of their hearts and not with any thought of cheating her or defrauding her, each having no knowledge of the value of the stock, agreed to and did purchase it from the plaintiff.

"It was suggested by the defendants on the stand that they had been willing to retransfer the stock if a guardian was appointed for the plaintiff so that it might be conserved, thus evidencing their knowledge of what is undoubtedly the fact, that the plaintiff is not entirely capable of protecting her own interests. Because of this fact known to the parties and the fact that the price paid; that is, the par value of the stock, was, at the time, much less than its actual value, unknown to all the parties, it appears to the court that because of the unusual circumstances of the case and the inadequacy of the consideration, although unintentional, deprives the contract of that mutuality which is necessary to a valid binding contract, and that the sale should be rescinded, placing the parties in status quo.

"Because of the fact of absolute good faith and this being an equitable cause, it is the opinion of the court that each party should pay their own costs."

Afterward, the court entered a final judgment in favor of plaintiff decreeing that the parties should be placed in statu quo by defendants returning to plaintiff the stock in question. From that judgment, defendants have appealed to this court, assigning as error that the trial court erred in entering judgment for plaintiff.

The testimony shows appellants were about seventy-six years old and that respondent was ninety years of

age at the time of the trial; that she had engaged for several years in housework and worked some in a cannery, but that her mental faculties were unimpaired; that for some time prior to February, 1934, she lived with a daughter in Olympia, and on or about that date, she moved to the home of appellants, staying there until December, 1936, when she returned to her daughter's home.

The reason of her going to live with appellants was given by her that she was lonesome, though it appears by numerous letters admitted in evidence which she wrote to appellants, that she was not satisfied with the living conditions at her daughter's home. Appellants and respondent are full cousins. When respondent went to live with appellants, she brought with her several hundred dollars in cash. This she delivered to appellant Gustave Eschbach, who placed it with his papers and money in a safe deposit box, putting her papers and money in a separate envelope. As long as she lived with appellants, her money and papers were so kept by them.

The respondent purchased this brewery stock in May, 1933, and it was transferred, as shown by the testimony of the secretary of the brewing company, to Gustave Eschbach on April 29, 1935. Some time in the early part of 1935, respondent became dissatisfied with her investment of the brewery stock because of the fact that no dividends had been paid on it, and she made a trip to some office in Olympia to inquire about it. After this trip, she was not satisfied with the information she received and decided that she wanted to sell her stock and asked appellants to purchase it. They declined at first, but finally did make the purchase for seven hundred dollars, after she had threatened to sell for five hundred dollars.

The testimony shows that, at the time of the sale,

appellants had in their deposit box the stock and some of respondent's money, keeping it in a separate envelope, and then, after the sale, Gustave Eschbach simply kept the new stock issued to him and placed seven hundred dollars in respondent's envelope. At the time of the transfer of the stock to appellants in April, 1935, the list sales price of the stock was $1.95 per share, and at the time of the trial it was worth many times that price.

The trial court found that neither respondent nor appellants knew anything about the price of the stock at the time of the sale.

When respondent left the home of appellants, the parties settled certain of their affairs concerning board for respondent and signed writings as follows:

"March 1935

"I, Caroline Meyer have 700 dollars by Gustave Eschbach for my brewery stock which I have sold him. This should be paid as I need it or all if I want it.

CAROLINE MEYER
GUS ESCHBACH
LOUISE LEIDER"

"March 1, 1935.

"Gus Eschbach bought brury stock from Mrs. Myer for 700.00 seven Hundred dollarz witch is too paed as shee wants it or all at one Time.

GUS ESCHBACH
CAROLINE MEYER
LOUISE LEIDER."

These writings, it will be noticed, were dated back to approximately the time of the sale of the stock. We have carefully read all of the evidence and the exhibits and conclude that there was no fraud practiced by appellants, as charged in the complaint. We agree with the trial court, as set out in his memorandum opinion, when he said "the transaction was above board and in the best of good faith." Respondent

did trust appellants by turning over to them her money from time to time, all of which they accounted for in every particular, nor did appellants ever attempt to mislead respondent in any way.

There was some testimony concerning appointment of a guardian for respondent, but this occurred about the time of the trial and had nothing to do with her condition of mind at the time of the sale of the stock in question. There was no evidence introduced concerning her mental condition at such time. Therefore, we must presume that, at the time the sale of stock was made, she was mentally competent to transact ordinary business.

Respondent urged that the sale of stock was had in December, 1936, but we find, after considering the evidence, that it was had at the time of the transfer of the stock, as shown by the testimony of the secretary of the brewing company. Her certificates were endorsed by her as of April 29, 1935, her signature being guaranteed by a Tacoma bank. The new stock in lieu of the ones she endorsed was issued to appellant Gustave Eschbach on May 4, 1935. Then, too, both parties signed the receipt set out herein. All these facts show without doubt that the sale of the stock was of April 29, 1935.

The evidence shows that the respondent invested in the stocks with the idea in mind of securing dividends, interest she called it, from time to time; and, when the dividends were not available, she became dissatisfied and determined to sell, if at a sacrifice. It was her good fortune that she had friends who were willing to pay her the par value of the stock, thus saving her the two hundred dollars difference between the amount she had determined to sell for and the price she received.

True, in the light of subsequent events, she made

a bad bargain when she sold her stock, but courts cannot be of any assistance in such cases.

In *Howland v. Day*, 125 Wash. 480, 216 Pac. 864, this court observed:

"We have ourselves laid down the rule, too often to need citation, that parties cannot be relieved from their bad bargains merely because they are bad bargains. There must be something else in addition to great inequality in the bargain, viz., fraud, undue influence, coercion and the like. Fraud is never presumed. It must be proven by evidence that is clear, cogent and convincing."

Neither can courts grant relief when there is a mere inadequacy of consideration, such as we find in this case.

In *Tausick v. Tausick*, 52 Wash. 301, 100 Pac. 757, this court stated:

"Mere inadequacy of consideration is not enough to avoid a contract entered into between parties of mature judgment, nor can one who claims to have been overreached invite the review of a court of equity unless the inadequacy of consideration is so great that a presumption of fraud follows the recital of the transaction."

In *Schneller v. Hayes*, 176 Wash. 115, 28 P. (2d) 273, we said:

"Courts will not ordinarily undertake to weigh the adequacy of consideration. The parties, being competent, in the absence of any undue influence or overreaching, are permitted to make their own contract."

To the same effect, see *Nelson v. Brassington*, 64 Wash. 180, 116 Pac. 629, Ann. Cas. 1913A, 289, and *Mowbray Pearson Co. v. Stanton Co.*, 109 Wash. 601, 187 Pac. 370, 190 Pac. 330; 6 Cal. Jur. 189, § 128, and 6 R. C. L. 679, § 86.

It is also suggested that there was such a lack

of mutuality as would compel the court to rescind the contract, but this was an executed contract and so treated by both parties. Lack of mutuality cannot be urged after the contract has been completely executed. *Rawleigh Co. v. Langeland,* 145 Wash. 525, 261 Pac. 93.

We conclude that the contract of sale was fairly entered into and without fault on the part of anyone connected with it.

The case will be reversed, with instructions to dismiss.

Appellants will recover their costs in this and the trial court.

STEINERT, C. J., MAIN, and BLAKE, JJ., concur.

HOLCOMB, J. (dissenting)—In my opinion, the judgment was right on the law and facts and should be affirmed.

I therefore dissent.