[No. 32395. Department One. September 17, 1953.]

ANNA JOHNSON, *Appellant,* v. S. L. SAVIDGE, INC., *et al.,*
*Respondents.*[1]

*Warner, Pierce & Peden,* for appellant.

*Eggerman, Rosling & Williams* and *William A. Helsell,*
for respondents.

HILL, J.—The crux of this case is whether the appellant,
Anna Johnson, received adequate consideration for the exe-
cution of her promissory note and the chattel mortgage
given to secure the same, which mortgage S. L. Savidge,
Inc., seeks to foreclose. (We shall hereinafter refer to S. L.
Savidge, Inc., as though it were the sole respondent.)

[1]Reported in 260 P. (2d) 1088.

Respondent made a loan to Arthur Taft July 16, 1951, and took from him a promissory note in the amount of $425.04. As security for the note, Taft executed and· delivered to respondent a chattel mortgage on a 1946 Pontiac sedan that he claimed to own, his evidence of ownership being the certificate of title duly signed and endorsed by appellant, whose name appeared thereon as the legal and registered owner.

About four days thereafter, representatives of respondent were contacted by the appellant, "who *advised* them that said Arthur Taft was not the owner of said automobile and who further *stated* that Taft had no authority to mortgage the same." She further *"advised"* respondent that "Taft had acquired the Certificate of Title . . . by breaking and entering her dwelling and removing the same"; but she *"admitted* that the signature on said Certificate of Title was her own," and that it had been thereon when Taft acquired possession of it. (Quotations are from the findings of fact; italics are ours.)

Thereafter, July 26, 1951, at the office of appellant's then attorney, Taft executed a confession and agreement wherein he admitted that he had stolen appellant's certificate of title to the 1946 Pontiac sedan and had thereafter placed a chattel mortgage on the automobile in the amount of $425.04, with respondent as mortgagee; and agreed that he would pay appellant that amount in monthly payments at $35.42 or more, in order that she might pay off the chattel mortgage.

For some reason, appellant did not want Taft to get into trouble in consequence of the execution of the July 16th mortgage, and she executed and delivered a note to respondent (July 27, 1951) in the amount of $342.84. (This amount was arrived at by subtracting the premium, $82.20, for collision and public liability insurance which respondent had placed on the car for Taft, from the amount of the note that Taft had given.) Her note, also, was secured by a chattel mortgage on the 1946 Pontiac sedan, executed and delivered by her concurrently with the note. Testimony indicated that the Taft mortgage was canceled.

Appellant made no payments on this note. When respondent commenced foreclosure of the chattel mortgage of July 27, 1951, by notice and sale, appellant commenced an action to restrain the foreclosure and to transfer the proceedings to the superior court, alleging that there had been no consideration for the note and mortgage, and alleging, further, that the note and mortgage had been wrongfully obtained by misrepresentation, duress, and overreaching.

The trial court found that appellant's promissory note and chattel mortgage were executed by her as her free and voluntary act and deed and with full knowledge of the legal force and effect thereof, and were supported by adequate consideration.

We are in entire accord with the trial court that appellant did not establish any misrepresentation, duress, or overreaching.

Bearing upon the issue of the adequacy of consideration, the trial court found that the note and chattel mortgage executed by the appellant on July 27, 1951, were "executed as a good faith settlement of the dispute which had arisen" between appellant and respondent "over their respective rights in and to said 1946 Pontiac Sedan"; and that thereafter the respondent "took no steps to recover said obligation from Taft and forebore to take action to foreclose the mortgage executed by Taft."

The trial court further found that Arthur Taft, on July 27, 1951,

". . . was employed by the Air Mack Equipment Company in Seattle, Washington but since that date has disappeared and at the time of this action his whereabouts are unknown."

Appellant throughout predicates her argument upon the proposition that the original chattel mortgage given by Taft was void. This, in turn, is based upon the assumption that the facts were as testified to by her and corroborated by Taft's signed confession.

Taft was not a witness at the trial, and the trial court obviously did not accept as verities the testimony of appel-

lant that Taft had no authority to mortgage the automobile and had stolen the certificate of title. Very significantly, the trial court's finding was as to what appellant had "advised" (or "stated" to) respondent.

Respondent was entitled to challenge the veracity of those statements.

The validity of the Taft mortgage was certainly not indisputable or legally certain, but neither was its invalidity. Had respondent commenced to foreclose it, appellant would have had to establish that Taft had no right to the certificate of title which she had endorsed in blank.

The record of the cross-examination of appellant leaves us very skeptical concerning the truth of much of her testimony. Taft's whereabouts were unknown and he was not subjected to cross-examination to test the factual accuracy of his "confession." The evidence adduced by appellant in this case did not establish to the trial court's satisfaction, or to ours, that Taft had no right to the certificate of title. We are satisfied, on a consideration of the entire record, that the Taft mortgage had at least the standing and merit of what is termed in law a "doubtful claim," and that the trial court was justified in finding that there was a subsisting dispute between appellant and respondent as to the validity of the chattel mortgage executed by Taft and as to the respective rights of the parties in and to the appellant's 1946 Pontiac sedan.

■ Forbearance to prosecute a valid claim or assert a legal right constitutes sufficient consideration for a contract. *Howell v. Benton,* 40 Wn. (2d) 871, 875, 246 P. (2d) 823 (1952), and cases there cited. It is not essential, to constitute such a consideration, that the claim be indisputable or legally certain; where the validity of the claim is doubtful, the existence of a possibility of recovery is sufficient. *Snohomish River Boom Co. v. Great Northern R. Co.,* 57 Wash. 693, 107 Pac. 848 (1910); *Nicholson v. Neary,* 77 Wash. 294, 137 Pac. 492 (1914); *Johnson v. Savage,* 163 Wash. 478, 1 P. (2d) 890 (1931); *Jones v. Reese,* 191 Wash. 16, 20, 70 P. (2d) 811 (1937); *Opitz v. Hayden,* 17 Wn. (2d) 347, 372, 135 P.

(2d) 819 (1943); *Bellingham v. Whatcom County,* 40 Wn. (2d) 669, 245 P. (2d) 1016 (1952).

■ The rule that forbearance or a promise to forbear suit upon a doubtful claim is good consideration, whether suit has or has not begun, is generally recognized, but, as pointed out in 1 Williston, Contracts (Rev. ed.) 476, § 135, the difficulty is to determine what is a doubtful claim. The author points out that 1 Restatement, Contracts, 83, § 76(b), combines a subjective requisite of a claim bona fide made with the objective requisite that it must be reasonably doubtful.

■ The forbearance need not run to the person to whom the promise to forbear is made, but may be forbearance to press a claim against a third party if such is the forbearance the promisee bargained for. *Schoening v. Maple Valley Lbr. Co.,* 61 Wash. 332, 112 Pac. 381 (1910); 1 Restatement, Contracts, 80, § 75(2).

■ We are convinced that all the findings of fact by the trial court are sustained by the evidence, and that the findings support the conclusions of law and the judgment. The judgment is affirmed.

GRADY, C. J., MALLERY, WEAVER, and OLSON, JJ., concur.