[No. 33242.   Department One.   September 1, 1955.]

UNIVERSAL C. I. T. CREDIT CORPORATION, *Appellant,* v.
C. C. DeLISLE *et al., Respondents.*[1]

*D. W. Moore (Frank V. Barton,* of counsel), for appellant.

*S. Dean Arnold,* for respondents.

[1]Reported in 287 P. (2d) 302.

SCHWELLENBACH, J.— This is an appeal from a judgment dismissing an action on a written guaranty.

During the times involved herein, the Engle Motor Company was a corporation, having its place of business in Lewiston, Idaho. Its business was the sale of motor cars. C. C. DeLisle owned thirty-seven per cent of the stock of the corporation and was its president. His brother, E. F. DeLisle, was its manager.

March 25, 1952, Engle Motor Company executed to Universal C. I. T. Credit Corporation what was termed "Retail Protection Agreement for Automobile Dealers." Under the agreement, C. I. T. would pay cash for automobiles at the Nash factory and place them on the Engle floor. When the dealer sold the cars, it paid C. I. T. off. Contracts were also handled under this agreement. When Engle sold a car, it would sell the contract to C. I. T. for cash and C. I. T. would carry the contract.

June 20, 1952, C. C. DeLisle and E. F. DeLisle executed a guaranty to C. I. T., the pertinent portion of which is as follows:

"To UNIVERSAL C. I. T. CREDIT CORPORATION:

"Each of us request you to extend credit to, make advances under wholesale floor plan arrangements or otherwise, purchase notes, conditional sale contract, chattel mortgages, bailment leases or other obligation, herein generally termed 'paper' from or otherwise to do business with or to renew or to extend any obligation of, or to forbear for any period of time the strict enforcement of any obligation of the above named Dealer, hereinafter called DEALER and to induce you to so do and in consideration thereof and of benefits to accrue to each of us therefrom, each of us as a primary obligor jointly and severally and unconditionally guarantees to you ('you' and 'Your' include your present and future subsidiary and affiliate companies) that Dealer will fully, promptly and faithfully perform, pay and discharge all Dealer's present and future obligations to you; and agrees, without your first having to proceed against Dealer or to liquidate paper or any security therefor, to pay on demand all sums due and to become due to you from Dealer and all losses, costs, attorneys fees or expenses which you may suffer by reason of Dealer's default; and agrees to be bound by and on demand to pay any deficiency established by a sale of paper or security held with

or without notice to us; together with a reasonable attorney's fee (15% if permitted by law) if placed with an attorney for collection from us. Each of us hereby Subordinates any sums now or hereafter due to him from Dealer to the payment of any sums now or hereafter due you from Dealer. Each of us assigns to you all sums due or to become due to any of us from Dealer to the extent of our obligations to you hereunder, and agrees to execute any further instrument necessary to give effect to such assignment."

Subsequently, the Engle Company became financially involved, resulting in a loss to C. I. T. of $5,072.65. This action was commenced against C. C. DeLisle and his wife. The complaint alleged the execution of the guaranty agreement, dated June 20, 1952 (attached to the complaint as exhibit "B"), and the execution of the retail protection agreement, dated March 25, 1952 (attached to the complaint as exhibit "A"). Paragraph V of the complaint alleged:

"That the plaintiff in consequence of said agreement, marked 'Exhibit B' and said guarantee marked 'Exhibit A', purchased from the Engle Motor Company various papers and contracts on the sale of new and used cars by Engle Motor Company, between May, 1952 and February 1954, and during the said period the plaintiff re-possessed certain new and used cars for failure of the purchaser thereof to pay the installments due thereon on the due dates thereof, sold said cars, applied the proceeds thereof to the account of Engle Motor Company, and as a result of said repossession and sales there is now due the plaintiff from said Engle Motor Company, the sum of $5072.65."

At the close of the plaintiff's case, the trial court dismissed the action on the ground that there was no consideration for the guaranty. This appeal follows.

When new parties assume obligations with respect to a contract after its execution and delivery, and a new transaction is engrafted on the original one, conferring additional rights on the obligee, there must be an independent consideration for the new undertaking. However, a guaranty contract executed after the creation of the principal obligation is supported by a consideration if it is predicated upon an antecedent promise with respect thereto, made as an inducement to the principal obligation, either directly by

the undertaker or by the principal obligor in such a way as to bind him in a legal duty to the obligee. Annotation, 167 A. L. R. 1175.

The complaint alleged that the plaintiff purchased various papers and contracts from the Engle Company "in consequence of" the agreement of March 25, 1952, and the guaranty of June 20, 1952. One theory advanced by appellant is that the original agreement and the guaranty were supported by the same consideration.

This court, in *Cowles Publishing Co. v. McMann*, 25 Wn. (2d) 736, 172 P. (2d) 235, 167 A. L. R. 1164, recognized the exception that a contract of guaranty, although executed at a time subsequent to the creation of the principal obligation, is founded upon a consideration if its execution is the result of previous arrangement, the principal obligation having been induced by or created on the faith of the guaranty. However, with reference to that rule, we stated:

"A review of the cases makes it apparent that the rule contended for by appellant has been limited in its application to situations where at the time the principal obligation is entered into: (1) the guarantor has offered or promised the debtor to guarantee the debt for him, and the debtor communicates this information to the creditor, who executes the principal contract in reliance thereon, (2) or the guarantor makes such promise direct to the creditor with the same result, (3) or the debtor gives the creditor an assurance that, if he later deems the debt insecure, he might look to a certain person, then named by the debtor, to guarantee the debt. [Citing cases.]

"The cases clearly show that the basic premise of the rule relied upon by the appellant is that the creditor, in entering into the principal contract, *relied upon an existing offer or promise of the guarantor to bind himself at some future date.*"

It is evident that neither situations (1), (2), nor (3) existed in this case. There is nothing in the record to show that C. I. T., when it entered into the principal contract, relied upon an existing offer or promise of DeLisle, made either to Engle Motor Company or to C. I. T., to bind himself at some future date. Appellant points to the fact that the

principal contract was signed by DeLisle as president of the motor company. The principal contract was the obligation of Engle Motor Company, a corporation, and was not the obligation of DeLisle.

Appellant also contends that the guaranty was supported by an independent consideration. There was evidence that the financial condition of the motor company had dropped steadily to such a position that C. I. T. felt insecure about the account; that, in order to continue the account, it would have to obtain the personal guaranty of the officers of the corporation; and that it secured the guaranty from DeLisle and extended further credit in reliance thereon.

The rules of consideration applicable in controversies involving contracts generally, apply in construing the effect of surety and guaranty arrangements. A benefit to the principal debtor or to the guarantor on the one hand, or some detriment to the guarantee on the other, is sufficient consideration for a contract of guaranty. *Castle & Co. v. Public Service Underwriters,* 198 Wash. 576, 89 P. (2d) 506. A consideration moving to the principal alone, contemporaneous with or subsequent to the promise of the guarantor, is sufficient. *Pacific Nat. Bank v. Aetna Indemnity Co.,* 33 Wash. 428, 74 Pac. 590. And the extension of further credit is also considered a sufficient consideration for a promise to pay both the existing and future debts of the principal. *Puget Sound Nat. Bank v. Olsen,* 174 Wash. 200, 24 P. (2d) 613.

Yet, beyond the bare fact of a benefit or detriment or, more specifically, the extension of further credit, it is fundamental that such must arise out of an agreement between the parties. There must be a meeting of the minds. In the instant case, the testimony is that appellant, in order to continue the account, secured the guaranty from respondent through its representative in Lewiston. There is not one word of testimony that respondent executed the guaranty in order that further credit be extended to the motor company. There is nothing in the written guaranty itself to indicate that it was given in consideration of the exten-

sion of further credit. Appellant has failed to prove that the guaranty was supported by an independent consideration.

The judgment is affirmed.

HAMLEY, C. J., DONWORTH, FINLEY, and OTT, JJ., concur.

---

November 1, 1955. Petition for rehearing denied.