[No. 36138.    Department One.    March 8, 1962.]

LLOYD T. JOHNSON *et al.*, *Appellants*, v. HOBART P. TANNER
*et al.*, *Respondents.**

*A. Clemens Grady*, for appellants.

*D. J. Cunningham*, for respondents.

ROSELLINI, J.—The appellants brought this action on an
alleged written contract (in the form of a pledge agreement
and promissory note dated July 5, 1956) for the purchase
of a share of Centralia Plywood, Inc., stock. The trial court

* Reported in 369 P. (2d) 307.

found that the appellants had sold the stock to the respondents under a contract of sale executed in 1953; that this contract had been fully performed by the respondents; that the instruments allegedly executed on July 5, 1956 were in fact an attempted novation which failed; and that the purported signature of the respondent Hobart P. Tanner, which appeared on them, was not his signature.

Error is assigned to these findings, it being the contention of the appellants that the instruments executed in 1953 were intended as a lease, rather than a sale, and that the evidence preponderates against the trial court's finding that the signature appearing on the instruments dated in 1956 was not the signature of the respondent husband.

In regard to the first of these contentions, the evidence was that in the early part of 1953, Mr. Tanner approached Mrs. Johnson with a proposal that he work her share of stock in the plywood company. He was looking for a job at the time, and there was apparently some advantage to be gained if he held a share of stock in the company. Mrs. Johnson said that she was willing to lease the stock to him. Together they went to the Tenino-Oakville Bank, in Tenino, where a Mr. Waite prepared an instrument under the terms of which the share of stock was to be transferred to the name of Mr. Tanner on the books of the company, and Mr. Tanner was to pay a rental of 25 cents an hour for every hour worked. The agreement was to remain in force as long as Mr. Tanner continued his employment with the company or until such time as the Johnsons desired to sell the share, at which time he would be given a first option to purchase it.

This agreement and a stock power to Mrs. Johnson were signed by Mr. Tanner and Mrs. Johnson. The agreement was acknowledged by Mr. Waite and the stock power was witnessed by him.

Immediately after these instruments were executed, Mrs. Johnson disclosed to Mr. Tanner the fact that the company's policy was not to allow leases of stock at a rental greater than twelve and one-half cents an hour. Mr. Tanner thereupon objected that he did not want to do anything in

violation of company rules. His testimony at the trial was that Mrs. Johnson then stated that she had the forms for a sale agreement and that they should execute those, which was done.

These instruments consisted of a promissory note for $3,250, with interest at 6 per cent per annum, to be paid at the rate of 25 cents per hour worked, so long as Mr. Tanner remained in the employ of the company, and at the rate of $50 or more a month if he left the company. The note contained an acceleration clause and a provision for attorney's fees.

Attached to the note was a pledge agreement which recited that the pledgor had purchased one share of stock for $3,500 (which the evidence tended to show was the generally accepted value of the shares at that time), that a $250 down payment had been made, and that the balance of $3,250 had been loaned to the pledgor by the pledgee. Under the terms of this agreement, the stock was to be redelivered to the pledgor when the loan was repaid. These instruments were signed by the parties, but were not witnessed.

By a separate oral agreement the down payment was deferred until the balance of the note had been paid; and Mr. Tanner agreed to pay a bonus of $200 if he should earn a sufficient amount to pay off the note within a specified time.

As was the custom in transactions of this sort, the company was notified of the agreement and the amounts required under the terms of the agreement were deducted from Mr. Tanner's salary and remitted to Mrs. Johnson. Each month Mr. Tanner received a mimeographed form on which he was advised of the amount that had been deducted from his earnings to "apply on the purchase of stock."

The terms of the agreement were carried out and the down payment, plus interest, and the bonus were paid by midsummer of 1959.

Mr. Tanner said that he had always understood that he was buying the share. The only evidence tending to show that the transaction was not intended as a sale was the

testimony of Mrs. Johnson, who said that she had never meant to sell the share of stock.

This evidence was sufficient to support the trial court's finding that the lease agreement was superseded by a sale agreement before either party had acted on the strength of it; that the pledge and the promissory note were intended as a sale and not a lease; and that the agreement was fully performed.

But the appellants contend that the court should have found that the parties executed a new agreement in 1956, whereby the sale price was increased by $15,000. There was evidence that the parties never discussed this agreement before it was allegedly signed, and there was no witness willing to testify that he had been present at the time of the alleged execution of the document, except Mrs. Johnson. Mr. Tanner denied that he had signed these instruments, and the signature appearing on them is H. P. Tanner, whereas on all the other documents and letters in the record, his name is signed Hobart P. Tanner. There is also an apparent dissimilarity in the handwriting when compared with other signatures.

The evidence on this point is in conflict and we will not disturb the trial court's findings. But had the trial court found that the signatures appearing on the instruments were those of Mr. Tanner, its judgment in favor of the respondents would nevertheless have been correct, since it appears that there was no consideration given for the alleged agreement of 1956. It is well settled that an agreement to do that which one is already obliged to do is not sufficient consideration to support a contract, and accordingly a promise to pay additional compensation for the performance by the promisee of a contract that the promisee is already under obligation to the promisor to perform is without consideration. 17 C. J. S. 465, § 112. Here the trial court had previously found that the appellants had entered into a binding contract to sell the share of stock in 1953, and the respondents were never in default under this contract. The attempted extraction of a new and greater considera-

tion from the respondents, therefore, could not be sustained in law.

The appellants also make some objection to the admission in evidence of one item and the exclusion of another, but readily concede that both were immaterial.

We find no error and the judgment is affirmed.

HILL, WEAVER, OTT, and FOSTER, JJ., concur.