[No. 41588. En Banc. July 1, 1971.]

WILFRED HUBERDEAU, *Petitioner,* v. ANDREW DESMARAIS *et al., Respondents.*

*Ted A. Roy* (of *Hovis, Cockrill & Roy*), for petitioner.

*Alan A. McDonald* (of *Halverson, Applegate, McDonald, Bond & Grahn*), for respondents.

HALE, J.—Defendants, husband and wife, bought a hop farm on an executory contract of conditional sale. Several years later, the husband signed an agreement that, in event of a forfeiture, the buyers would transfer to the seller their United States Department of Agriculture hop allotment base. When the seller declared a forfeiture, however, defendants refused to transfer the allotment base, claiming that the husband's agreement to do so was unenforceable for want of consideration. From a decree ordering the transfer of the hop allotment base to the vendor, defendants appealed, and the Court of Appeals, concluding that the undertaking was without consideration, reversed. 2 Wn. App. 265, 467 P.2d 624 (1970). This court granted review (78 Wn.2d 991 (1970)), and affirms the Court of Appeals.

Andrew Desmarais and his wife Jeanne had a 40-acre hop farm near Moxee, Washington, where they had lived and farmed for 12 or 13 years; Andrew had been a farmer and associated with hop growing most of his life. In February, 1962, the couple sold their farm and, paying $40,000 down, bought an 80-acre hop farm from Wilfred and Nadine Huberdeau, husband and wife, on a conditional sale contract at a total price of $160,000. The conditional sale contract, signed on February 6, 1962, required the Desmarais to pay $5,000 principal and interest at 6 per cent beginning January 5, 1963, and annually thereafter. All pay-

ments were to be applied first to interest and next to principal. The Desmarais were to keep the taxes currently paid; time was declared of the essence with the right in the seller for breach of conditions to declare a forfeiture by registered mail. Buyers had the right to reinstate their contract by complying with its terms within 30 days of receiving such notice.[1]

After making the $40,000 downpayment on February 15, 1962, defendants paid principal and interest in compliance with the contract for the first 2 years: January 2, 1963, they paid $5,000 on the principal and the current interest of $6,300; the next year, on January 3, 1964, they paid the $5,000 on the principal and $6,900 interest. Then they fell largely in arrears, paying only the accrued interest and taxes and nothing thereafter on the principal. January 5, 1965, the Desmarais paid Huberdeau $6,600 in interest; $6,600 in interest on January 4, 1966, and the same again on January 5, 1967. Until the time of forfeiture, total payments on principal, including the $40,000 downpayment,

---

[1]"Time is of the essence of this contract and in the event that the purchaser shall fail to make any payment or to perform any condition under this contract, the seller may serve notice of forfeiture by delivering said notice to the purchaser or by mailing same by registered mail to his last known address or the address below given. In the further event that the purchaser shall fail to make payment of any sums due hereunder together with attorney's fee for the preparation of said notice and the expense of serving the same within 30 days from delivery of such notice, then and in those events said notice shall become absolute and this contract shall become null and void, and the purchaser shall immediately and peacefully surrender possession of all property described herein, and all rights of the purchaser under this contract and to the property described therein shall immediately cease and determine and the title to said property shall revert to and revest in the seller without further action on the part of the seller and without any right of the purchaser to reclamation or compensation for money paid or for improvements made on said premises, as fully, perfectly and absolutely as if this agreement had never been made and all money theretofore paid to the seller under this contract shall thereupon be forfeited without process of law and shall be retained by and belong to the seller as the accrued and reasonable rent of said premises from this date to the time of such forfeiture and as the liquidated damages to the seller for the purchaser's failure to complete this contract."

came to $50,000; interest payments totaled $33,000 and additionally, between 1962 and the first half of 1967, the Desmarais paid over $5,000 in real-estate taxes on the property.

In 1965, while the Desmarais were in their fourth year of occupancy as hop growers, the hop-growing industry was brought under crop control regulation of the United States Department of Agriculture. 31 Fed. Reg. 9713, 10072 (1966); 7 U.S.C. § 601-74 (1966). Under these regulations, the Hop Administrative Committee, with regional offices in Portland, awarded the Desmarais what is described as a hop allotment base or marketing quota, which authorized them to grow and sell 102,238 pounds of hops from their 1966 crop. This hop allotment base, or quota, was presented to them personally as hop growers and was not an allocation to them as owners of farmland. The record does not indicate that their hop allotment base was tied or attached to any particular land, farm or acreage, but instead that it was and is issued by the Hop Administrative Committee to the individual hop farmers as a kind of personal license or permit.

The Desmarais, as earlier noted, failed to make payments on the principal for the year 1965—they received the hop allotment base in 1965—and for the years 1966 and 1967, but each time paid the current interest in full. When, on January 5, 1965, Mr. Desmarais paid Mr. Huberdeau $6,600 interest, he explained that he would be unable to pay the $5,000 on the principal. Mr. Huberdeau indicated at that time that he would be satisfied with the interest only and gave no warning, direct or indirect, that he intended to declare a forfeiture. This event was repeated a year later when, on January 4, 1966, the day before it fell due, Desmarais paid to Huberdeau the accrued interest of $6,600 with nothing on the principal. Again Mr. Huberdeau stated that he was satisfied with receiving the interest only. And, on January 5, 1967, Mr. Desmarais for the third time paid the accrued interest of $6,600 with nothing to principal and as Desmarais described it, Mr. Huberdeau "said as long as he got the interest, he was satisfied."

Mr. Desmarais testified that on each of these three occasions Huberdeau had made no demands, promises, or threats of forfeiture or repossession, nor had he insisted upon any pledge or assignment of the hop allotment base, but each time indicated that he was satisfied with the interest alone. Mr. Desmarais' testimony was undisputed, too, that when accepting each payment, Mr. Huberdeau was aware of the depressed economic conditions of the hop industry and market. Mr. Huberdeau, he said, had visited him during the growing season and each fall after the hop-picking season. In making each of the three interest payments and on other occasions, Mr. Desmarais testified that he told Mr. Huberdeau that he would be unable to make the $5,000 payments due on the principal:

A. Yes, in the fall after hop-picking we would know where we stand by our crop and by our expenses we had during the year. Q. And this would be a matter of discussion between yourself, your husband and Mr. Huberdeau. A. Yes. Q. In other words, would you be telling him, "We are just going to be able to make the interest payment,"? A. Yes, I would tell him we weren't able to make the payment. Q. And what would he say? A. He said it was all right as long as we could pay the interest.

This was the situation when Desmarais made the interest payment to Huberdeau on January 5, 1967. According to Mr. Desmarais' uncontradicted testimony, when the $6,600 check was paid, Mr. Huberdeau affirmatively indicated that he wanted the Desmarais to keep the farm; that he wanted them "to make a go of it." It was obvious that the hop farm, even in experienced hands, had not been making money. The seller, having already received a $40,000 downpayment, plus two annual payments of $5,000 on principal, and assurance of further payment of interest at 6 per cent on an undiminishing principal, in all probability felt it to his financial advantage to keep the buyers in possession and operating the ranch until the economic auguries of hop farming took a turn for the better.

Accordingly, the vendor's acceptance of the interest in January, 1967, with his indication that he was satisfied

with it and hoped the Desmarais would stay on in possession and continue their hop growing, amounted to more than a simple waiver of or forbearance of the $5,000 principal payment. It constituted an affirmative undertaking by the vendor that he would not declare a forfeiture effective within the next crop year. In accepting the $6,600 interest for the third successive year under these circumstances, and in partial inducement to keep the buyers from surrendering the property, the sellers made an implied agreement not to forfeit the buyers' rights under the contract until the hops for the next ensuing growing season had been harvested and with reasonable dispatch marketed. The Desmarais, in buying the farm, had promised to pay principal and interest, but they did not contractually undertake to work it as a hop farm. The contract for purchase of the farm placed the buyer under no affirmative duty to raise hops or any other crop, or do anything other than pay the principal, interest and taxes, and preserve the vendor's security in the real estate and personalty. The circumstances of their paying and the vendors' accepting the $6,600 interest thus created an implied agreement that, if plaintiff accepted the interest, the defendants would continue to farm for another crop season. This produced more than a simple waiver or forbearance, and bound the sellers to leave the purchasers in possession for at least 1 more year.

The agreement to transfer the hop allotment base was signed by Desmarais after he had made the interest payment to Huberdeau on January 5, 1967. Mr. Huberdeau, around January 10, brought to the Desmarais the proposed draft agreement in controversy here, which, among other things, provided:

1.  Seller agrees to waive the timely payment of the 1967 installment under the terms of that certain real estate contract referred to above, provided however, that Purchaser shall not get credit therefor against the balance due thereunder, and none of the other terms and conditions of said contract shall be affected in any way, but shall remain in full force and effect, including but not limited to, Purchaser's obligation to make timely installment payments hereafter.

2.  Purchaser agrees that the allotment base granted to him pursuant to the Hop Marketing Order of 1965 shall be a part of the land included in said contract, and that in the event Seller elects to declare a forfeiture of Purchaser's rights under said contract because of a breach thereof by Purchaser, Purchaser agrees to take all steps and to perform all acts necessary to effect a transfer of said allotment base to Seller.

He asked the Desmarais to sign the agreement, but they told him they wished to consult with their attorney. They discussed the proposed agreement with their attorney a day or so later, and thereafter, on January 14, 1967, Mr. Desmarais—his wife refusing—signed it without notarization and returned the signed original to Mr. Huberdeau.

During the ensuing year, and while the Desmarais had what is described as a contract for the production of hops at 43 cents a pound, a price considerably higher than the prevailing market price, Desmarais several times informed Huberdeau that he would be financially unable to continue farming the place. He failed to tender either principal or interest due January 5, 1968, and a few days later, the plaintiff vendor served upon the Desmarais a notice of forfeiture and demanded assignment and transfer from them of the hop allotment base. Not until service of this notice had Huberdeau ever made a demand for the 1965, 1966 or 1967 principal payments, nor during the years of defendants' occupancy had Mr. Huberdeau threatened to or given notice of his intention to forfeit the vendees' interest in the 80 acres.[2]

---

[2]These facts are summarized in the court's finding of fact No. 4, as follows:

The vendees advised Huberdeau after the hop harvest in the late fall of 1966 that they would again, as in the previous two years, be unable to pay both interest and principal in 1967. It is undisputed that at that time, Huberdeau indicated his intention not to require principal payment in 1967. This was clearly the vendees' understanding when they withdrew money from their cash savings reserve to make the 1967 interest payment on January 5, 1967. Vendor-Huberdeau neither made a demand for payment of the 1965, 1966 or 1967 principal payments, nor gave a notice of his intention to forfeit the vendees' interest in the 80 acres until on or about January 16, 1968.

Defendant vendees do not contest the forfeiture and are willing to surrender the premises and abide by the notice and demand for repossession, but they refuse to turn over to the plaintiff the hop allotment base, contending that the written agreement to do so was unsupported by consideration and, therefore, unenforceable. From a decree of specific performance ordering the surrender and transfer of the hop allotment base, the Desmarais appeal.

A promise is not binding unless supported by consideration. Consideration may consist of an act, a forbearance, the creation, modification or destruction of a legal relationship, or a return promise given in exchange. Restatement, Contracts § 75 (1932). The surrender of or forbearance to assert an invalid claim or defense by one who has neither an honest nor a reasonable belief in the validity of the claim or forbearance will not constitute consideration. Restatement, Contracts § 76(b) (1932).

When, on January 5, 1967, after the purchaser had told Huberdeau several times during the season he was going to quit—meaning that he intended not only to quit the premises but also to discontinue farming the 80-acre hop farm —and Huberdeau replied in effect that, if the purchasers would pay the accrued interest and continue to farm for another season he would be satisfied with the interest and waive the annual payment of $5,000 due on the principal, Huberdeau made a binding promise to forbear to declare a forfeiture for the next crop year. At that point, the vendor and purchaser had reached agreement that the interest payment and the continuing farming operation supported the promise to forbear a forfeiture for the next payment period of 1 year, or, as the subsequent writing expressed it, "to waive the timely payment of the 1967 installment." Any belief thereafter that the vendor could have declared a forfeiture and repossessed the farm within the next year was unfounded in law and not based upon a reasonable hope of success.

The idea that a contract, to be enforceable, must be supported by consideration has its roots in the common-law

idea that one ought not be held to his gratuitous promises. 17 Am. Jur. 2d Contracts § 85 (1964). And this idea probably rests on the further thought that loose promises, idle talk, mere puffing or braggadocio induced by the friendliness or conviviality of an occasion ought not be deemed the stuff of which contracts are made. Although a gratuitous promise made in writing under seal was held enforceable at common law—for the formality of the seal was said to import a consideration to an otherwise idle promise—we have long since abandoned this idea. With the abolition of the seal (RCW 64.04.090), a gratuitous promise, even if reduced to a writing, remains unenforceable.

As a general proposition, the law does not look into the quantum or adequacy of the consideration, for that is a matter between the parties. 17 C.J.S. Contracts § 127 (1963); Schneller v. Hayes, 176 Wash. 115, 28 P.2d 273 (1934). Thus the courts will not ordinarily undertake to weigh the consideration, for in the absence of undue influence or such gross inequality as to constitute a constructive fraud, the value or worth of the consideration should be left to the contracting parties. Meyer v. Eschbach, 192 Wash. 310, 73 P.2d 803 (1937); Browning v. Johnson, 70 Wn.2d 145, 422 P.2d 314 (1967). This court, therefore, does not distinguish between consideration per se (sufficient consideration) and what might be called adequate consideration. But there must be a consideration. One test to be applied where more conventional measures seem inapplicable is that consideration will support and render a promise enforceable if it was "something bargained for." See, W. Shattuck, Contracts in Washington, 1937-1957, 34 Wash. L. Rev. 24, 49 (1959). Accordingly, where the consideration sought to be approved is not readily identifiable as among those described in the Restatement, Contracts § 75 (1932), it should in order to support the promise be recognizable as something bargained for. Snyder v. Roberts, 45 Wn.2d 865, 278 P.2d 348, 52 A.L.R.2d 631 (1955).

Thus, to constitute consideration,

[w]hen . . . a new transaction is engrafted on the

original one, conferring additional rights on the obligee, there must be an independent consideration for the new undertaking.

*Universal C. I. T. Credit Corp. v. DeLisle,* 47 Wn.2d 318, 320, 287 P.2d 302 (1955).

Forbearance to prosecute a valid claim constitutes a good consideration, but the claim must be valid or have reasonable prospects of successful prosecution. *Jones v. Reese,* 191 Wash. 16, 70 P.2d 811 (1937). The claim need not be indisputable and legally certain, but if uncertain and reasonably doubtful it must also be one asserted in good faith to constitute consideration. *Johnson v. S. L. Savidge, Inc.,* 43 Wn.2d 273, 260 P.2d 1088 (1953).

When, on January 5, 1967, Mr. Desmarais paid and Mr. Huberdeau accepted the $6,600 accrued interest, the purchaser discharged his duty and the seller his rights under their contract. The oral promise to forbear declaring a forfeiture made in exchange for the payment of the interest and for the added consideration that the Desmarais would remain on and work the farm for another crop year, bound the seller to forbear forfeiture for another crop year. When the later writing set forth an undertaking to transfer the hop allotment base in event of forfeiture, the seller gave and the buyers received no new, different or additional consideration in support of it. *Universal C. I. T. Credit Corp. v. DeLisle, supra.* Desmarais did not promise to transfer the hop allotment when he made his last interest payment on January 5, 1967. The exchange of promises between Huberdeau to waive a forfeiture for nonpayment of the $5,000 principal and by Desmarais to stay on and farm for another year was made without any reference to the hop allotment base and bound Huberdeau to forbear a forfeiture for 1 more year. *Browning v. Johnson, supra.*

Later, on January 14, 1967, when Huberdeau presented and Desmarais signed the writing in which Huberdeau promised again to "waive the timely payment of the 1967 installment" and Desmarais undertook to transfer the hop allotment base in case Huberdeau did elect to declare a

forfeiture, the purchaser received nothing and the seller gave nothing to support the latter promise. While the writing purported to engraft on the contract for the sale of the farm another agreement conferring additional rights on the obligee, no new and independent considerations moved to the obligor. Huberdeau had already waived the right to assert a forfeiture for 1 year for nonpayment of the $5,000 installment on January 5, 1967, when on that date he received the interest. He supplied the buyer with no new, added or different consideration on January 14th when he repeated that same promise in writing in purported consideration of the purchasers' promise to transfer the hop allotment base. The promise to transfer the hop allotment base contained in the writing was, therefore, a gratuitous one and, being unsupported by consideration, unenforceable.

The Court of Appeals is, therefore, affirmed, and the judgment of the trial court is reversed.

ROSELLINI, HUNTER, and WRIGHT, JJ., concur.

HAMILTON, C.J., and FINLEY, J., concur in the result.

NEILL, J. (concurring)—I concur in the result solely on the basis that plaintiff, having agreed in the first instance to waive timely payment of the 1967 installment, gave no new consideration in the written agreement wherein he promised only to do that to which he had already agreed.

The unchallenged findings of the trial court establish that plaintiff-vendor waived timely payment of the 1967 principal installment when he accepted the 1967 interest payment. However, under the rule of *Moeller v. Good Hope Farms, Inc.*, 35 Wn.2d 777, 215 P.2d 425 (1950), vendor remained in a position to declare a forfeiture for nonpayment of the principal installment by giving notice and allowing a reasonable time thereafter for defendant-purchasers to perform.

Plaintiff contends that the consideration supporting the written agreement of January 10, 1967, is the additional element of waiver of his right to declare a forfeiture for the balance of the 1967 crop year. If the agreement could

properly be so construed, the required consideration would be present. *Johnson v. S. L. Savidge, Inc.*, 43 Wn.2d 273, 260 P.2d 1088 (1953). However, such a construction would require a preliminary determination that the agreement is ambiguous. I find the language to be clear and unambiguous. The recited consideration, "seller agrees to waive the timely payment of the 1967 installment," promises nothing more than plaintiff had agreed to previously when defendants made the January, 1967, interest payment. Thus, there was no new and independent consideration for the written agreement of defendants to include the hop allotment as part of the land. *Johnson v. Tanner*, 59 Wn.2d 606, 369 P.2d 307 (1962).

STAFFORD, J., concurs with NEILL, J.

Petition for rehearing denied August 31, 1971.