[No. 10840-2-II.   Division Two.   October 19, 1988.]

VIRGINIA N. EMBERSON, as *Executrix, Appellant,* v. FRANCES G. HARTLEY, *Respondent.*

---

598

*Richard A. Jessup* and *Eisenhower, Carlson, Newlands, Reha, Henriot & Quinn,* for appellant.

*Marshall D. Adams* and *Adams, Gagliardi & Halstead,* for respondent.

PETRICH, J.—Virginia Emberson, as executrix of the estate of her late husband, Richard Emberson, appeals from an order granting summary judgment in favor of Frances Hartley. The dispute in this case arose through a disagreement between Emberson and her sister–in–law, Hartley, over the distribution of the nonprobate assets of the estate of Fannie V. Guthrie, the late aunt of Richard Emberson and Frances Hartley.

The issue before us on appeal is whether mutual promises of a brother and sister to equally divide nonprobate assets acquired by them in disproportionate amounts satisfies the necessity of consideration to support the agreement. We hold that the agreement was supported by consideration and accordingly, we reverse and remand for further proceedings.[1]

---

[1]The issue thus framed and resolved herein assumes that the agreement provides for an equal distribution of the assets. The resolution of that question must await further proceedings.

Fannie Guthrie died on November 1, 1983. In her will, after specific bequests, she left the remainder of her probate assets in equal shares to Emberson and Hartley. Additionally, at her death, Guthrie owned nonprobate assets consisting of 11 certificates of deposit, 5 bank accounts, and stock in 4 corporations. According to the inventory of nonprobate assets, the names of Guthrie and Emberson were listed on one certificate of deposit in the amount of $12,000 and 100 shares of AT&T common stock. Two certificates valued at $24,250 were in the names of Guthrie, Emberson, and Hartley. The remainder of nonprobate assets, including 400 shares of National Dairy Products stock, 400 shares of Dart and Kraft stock and 310 shares of Union Electric stock were in the names of Guthrie and Hartley. According to the figures assigned to stock issues in an agreement dated June 18, 1985, between Emberson and Hartley, Emberson was entitled to receive nonprobate assets totaling $30,350 by right of survivorship. Hartley was entitled to assets worth $218,512 by right of survivorship.

As early as February 1984, Hartley and Emberson began dividing the interest and proceeds of the certificates of deposit equally as they matured. This division is evidenced in a series of letters between Emberson and Hartley and letters between Emberson and the Boone County National Bank; copies of which Hartley received. Prior to June 24, 1985, Hartley did not object to this division or to the letters to the bank which specifically stated that the nonprobate inventory would be shared equally.

One month before Emberson's death from cancer, he asked Hartley to visit him at his home in Eugene, Oregon. On June 18, 1985, during this visit, both parties signed a document entitled "Agreement Between Frances G. Hartley and Richard M. Emberson Regarding Distribution of Nonprobate Assets of Fannie V. Guthrie Estate." The agreement set forth all of the nonprobate assets and provided for distribution:

"In accordance with the wishes of Fannie V. Guthrie, as documented in her will July 13, 1983, Item III, 'I give, devise and bequeath all the rest, residue and remainder of my property, real, personal and mixed of whatsoever nature, description and kind wheresoever situated to my niece, Frances G. Hartley and my nephew, Richard M. Emberson, Sr., in equal shares, absolutely and forever per stirpes.'"

The following day, Hartley took the agreement to her attorney. On June 24, 1985, Emberson received a letter of disaffirmance from Hartley's attorney, stating that Hartley would do nothing in furtherance of the agreement.

Virginia Emberson, as personal representative of her husband's estate, brought an action in Pierce County Superior Court to enforce the agreement based on breach of contract, breach of a family settlement agreement and wrongful withholding of a constructive trust. The trial court granted Hartley's motion for summary judgment and dismissed Emberson's action, holding that if there was an agreement between the parties, it was unenforceable because it was not supported by legally sufficient consideration.

Summary judgment is appropriate only if the pleadings, affidavits, depositions and admissions on file demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); CR 56(c). For the purposes of this review, we are satisfied that there is no fact question as to the existence of an agreement between the parties. Thus, our review is limited to the narrow issue of whether adequate consideration existed to support the agreement. Whether a contract is supported by adequate consideration is a question of law. *Keeter v. John Griffith, Inc.,* 40 Wn.2d 128, 130, 241 P.2d 213 (1952), quoting *Durand v. Heney,* 33 Wash. 38, 73 P. 775 (1903). As such, it is properly determined by the court in a summary judgment proceeding. The trial judge determined, as a matter of law, that any agreement between

Emberson and Hartley was not supported by sufficient consideration.[2] We disagree.

■ "Consideration may consist of an act, a forbearance, the creation, modification or destruction of a legal relationship, or a return promise given in exchange." *Huberdeau v. Desmarais,* 79 Wn.2d 432, 439, 486 P.2d 1074 (1971); Restatement of Contracts § 75 (1932). A promise for a promise is sufficient consideration. *Omni Group, Inc. v. Seattle–First Nat'l Bank,* 32 Wn. App. 22, 24, 645 P.2d 727 (1982). Where the consideration is legally sufficient, the "[c]ourts are loath to inquire into the 'adequacy'," that is, into the comparative value of the promises and acts exchanged. *Browning v. Johnson,* 70 Wn.2d 145, 147, 422 P.2d 314, 430 P.2d 591 (1967); *Meyer v. Eschbach,* 192 Wash. 310, 316, 73 P.2d 803 (1937). They will not relieve a party of a bad bargain as long as he or she is competent to a contract, unless the consideration is so inadequate as to constitute constructive fraud. *Rogich v. Dressel,* 45 Wn.2d 829, 843, 278 P.2d 367 (1954). There is no such claim here, and the circumstances of the case do not suggest it. Although Hartley may have entered into a bargain which she now regrets, we cannot say that her brother's promise to divide equally his share of the nonprobate assets did not constitute adequate consideration for it.

■ Hartley argues that consideration did not exist because the parties merely promised to exchange unequal sums of money. This argument is without merit. It is true that courts will not enforce a contract for the exchange of money at the same time, or at different times, when the

---

[2]Adequacy is distinguished from sufficiency of consideration. The latter phrase is concerned not with comparative value, but with that which will support a promise. Anything which fulfills the requirements of consideration will support a promise, whatever may be the comparative value of the consideration and of the thing promised. The relative values of a promise and the consideration for it do not affect the sufficiency of consideration. *Browning v. Johnson,* 70 Wn.2d 145, 147, 422 P.2d 314, 430 P.2d 591 (1967). We assume that the trial judge was referring to the adequacy of the consideration. In any case, we find that the consideration was sufficient and that we need not inquire into the adequacy of consideration.

element of time is no equivalent. *Sloan v. Sloan,* 66 A.2d 799, 800 (D.C. 1949). *See also In re Greene,* 45 F.2d 428 (S.D.N.Y. 1930); *Embola v. Tuppela,* 127 Wash. 285, 220 P. 789 (1923); 1 C. Corbin, *Contracts* § 129, at 555–56 (1950). This is a very narrow exception, however, based on the premise that a pecuniary consideration is capable of exact and definite admeasurement; its value is fixed and unalterable, and there cannot be any uncertainty as to its adequacy or inadequacy. Courts can, therefore, pass upon its adequacy without infringing the rule that where the parties have for themselves determined the adequacy of the consideration, courts will not review their decision. *See American Univ. v. Todd,* 1 A.2d 595, 599 (Del. Super. Ct. 1938); *Sloan v. Sloan, supra; Rease v. Kittle,* 49 S.E. 150, 153 (W. Va. 1904); 17 Am. Jur. 2d *Contracts* § 103, at 448 (1964).

The agreement at issue included a promise to divide corporate stock of four different corporations. The value of a particular stock is not capable of exact and definite measurement. It can change substantially over time, even altering greatly in a few days. *McNicol v. Collins,* 30 Wash. 318, 70 P. 753 (1902). Moreover, its value is also based on the subjective evaluations and desires of the parties. *See Jones v. Harris,* 63 Wn.2d 559, 388 P.2d 539 (1964); and *Meyer v. Eschbach, supra.* Thus, the inclusion of these stock shares in the division removes any implication that the parties merely promised to exchange unequal sums of money.

We hold, as a matter of law, that the agreement between Emberson and Hartley to divide the nonprobate assets of the Guthrie estate is supported by sufficient consideration in the form of mutual promises to divide the assets. Although the division may be disproportionate, we decline to inquire into the adequacy of the consideration. *Browning v. Johnson,* 70 Wn.2d at 147.

Accordingly, we reverse and remand for the further proceedings necessary to determine factual questions pertaining to the extent, purport, and intent of the agreement as

well as the existence of duress, if any, in entering the agreement.

REED, C.J., and ALEXANDER, J., concur.

Reconsideration denied November 17, 1988.

Review denied by Supreme Court February 28, 1989.